# SANFORD v. HERRON et al.; UHRI et al., Appellants.

### Division Two, March 26, 1901.

1. **Ejectment: TENANTS AFTER JUDGMENT.** Tenants of a defendant in ejectment are estopped after judgment for plaintiff from turning over the possession to their own grantees or those of their landlord. From the date of such judgment their possession as between plaintiff and them was his possession.

2. ———: JUDGMENT: INTERRUPTION IN ADVERSE POSSESSION. A judgment in ejectment against one in adverse possession breaks the continuity of the adverse possession. And the adverse possession of the judgment plaintiff in ejectment is not to be counted from the date the writ of restitution is issued and he is put into actual possession of the land, but from the date of the judgment. He is in law, by the judgment, invested with the possession.

3. ———: ———: ———: LIMITATIONS. If the plaintiff in ejectment has ten years' adverse possession counting from the date of the judgment, but lacking a few days of ten years counting from the date the writ of restitution was issued, that possession will be a good defense in a subsequent ejectment against such plaintiff or his heirs by one who acquired a tax title and asserts possession through the defendants in the first ejectment.

4. ———: POSSESSION OF ONE ROOM. The possession of one room of a house will not prevent the statute of limitations from running

against the rest of the house if the remainder of the building was in actual adverse possession. Nor will it avail anything unless such room is identified or designated by the evidence.

5. **Tenancy:** PROOF: PAYING RENT. The payment of rent is a fact going to the establishment of a tenancy, but not sufficient in or of itself.

Appeal from St. Louis City Circuit Court.—*Hon. Jas. E. Withrow,* Judge.

REVERSED.

*John M. Dickson* for appellants.

(1) The judgment in favor of Rose against Curry et al., on December 13, 1883, was *res adjudicata* between the parties to that suit, and as between them finally determined the superiority of his title to that under which they claimed and Rose's right of possession. Estes v. Nell, 140 Mo. 650. (2) From the date of that judgment the possession by the tenants must be deemed to have been the actual possession of Rose. The judgment in ejectment operating directly upon the right of defendants possession, could not cease to be operative upon that possession so long as the judgment lived. Their possession was necessarily his possession, and they would be estopped to deny that from that moment they held under Rose. Snell v. Harrison, 131 Mo. 503. (3) The tenants in possession of the premises at the institution of Dr. Rose's ejectment were there at the date of the judgment, and remained there after that, and after the issuance of execution to the sheriff they did not appear at the trial and contest or dispute Rose's claim to possession, nor did they set up anybody's possession against Rose. Under such circumstances the judgment was equivalent to an actual ouster and yielding of possession to Rose.

Moffatt v. Strong (N. Y.), 9 Bosw. 70. (4) Assuming that the ouster only began with the execution of the writ, and that adverse possession, if any, must date from the twenty-eighth of January, 1884, nevertheless, ten years did elapse from that date until the date of the institution of this suit. Calendar, Am. and Eng. Ency. of Law, vol. 29, title "Year." (5) The law as decided in this State is that where an execution is levied upon real estate while the lien of the judgment is in force, the deed under the sale on execution will relate back to the day of judgment, and the title which the defendant had at that time will pass. Bank v. Menard, 51 Mo. 48; Durrant v. Hulse, 67 Mo. 201; Slattery v. Jones, 96 Mo. 225.

*E. P. Johnson* for respondent.

(1) The trustee was not a necessary party to the tax proceeding, as the judgment against Charlotte Gebhart, the beneficiary in the deed of trust, barred his rights; and the sale under it vested the entire title to the property in Stephen Turner, the purchaser. Keating v. Craig, 73 Mo. 507, 509. (2) Neither Mike Geary, the trustee, nor Charlotte Gebhart, the beneficiary in the deed of trust, was a necessary party to said tax proceeding, and the sheriff's deed thereunder conveyed the legal title to the premises to Stephen Turner, leaving in the former only a right of redemption therein if they had not been made parties; and respondent was entitled to recover the possession of said premises. Stafford v. Fizer, 82 Mo. 393; Gitchell v. Kriedler, 84 Mo. 472; Myers v. Bassett, 84 Mo. 479; Williams v. Hudson, 93 Mo. 524. (3) The suit resulting in the judgment in the case of Rose v. Curry et al., for possession of these premises, was begun June 13, 1883. Mary E. Tanner was owner of them at that time, and neither

she nor any other owner of them at any time was a party defendant or privy to that suit. The judgment was *res inter alios acta,* and did not affect the rights of respondents. Adkinson v. Dixon, 98 Mo. 582; Henry v. Woods, 77 Mo. 277. (4) The judgment was in ejectment and was not *res adjudicata* of any question litigated in the proceedings. Ridgway v. Herbert, 150 Mo. 606; Swope v. Weller, 119 Mo. 556; Spencer v. O'Neill, 100 Mo. 49; Sutton v. Dameron, Id. 141; St. Louis v. Schulenberg & B. L. Co., 98 Mo. 613; Avery v. Fitzgerald, 94 Mo. 207; Ekey v. Inge, 87 Mo. 493; Prior v. Lambeth, 78 Mo. 538; Miller v. Dunn, 75 Mo. 260; Kimmel v. Benna, 70 Mo. 52; Slevin v. Brown, 32 Mo. 176. In St. Louis v. Schulenberg & B. L. Co. it was held that such a judgment is not admissible in evidence in a second such suit. (5) The great preponderance of authority is, that a judgment in ejectment does not break the continuity of an adverse possession until possession is taken under a writ of possession or obtained under it by attornment or consent of the tenant. Mabary v. Dollarhide, 98 Mo. 198; Jackson v. Haviland, 13 Johns. 229; Smith v. Trabue, 1 McLean 87; Kennedy v. Reynolds, 27 Ala. 364; Batterton v. Chiles, 51 Ky. (12 B. Monroe), 353; Carpenter v. Natoma Water & Mining Co., 63 Cal. 616; Bright v. Stevens, 1 Houst. 240; Smith v. Hornback, 4 Litt. 232; Hoskins v. Helm, Id. 309; Groft v. Weakland, 34 Pa. St. 308; Frederick v. Searle, 5 S. & R. 240. The only decision found in real conflict with the foregoing is Brolaskey v. McClain, 61 Pa. St. 146. The case of Gower v. Quinlan, 40 Mich. 572, which dealt with a decree that defendant execute a deed, held that it transferred the seizin the same as a deed would have done. The cases of Snell v. Harrison, 131 Mo. 495, and Estes v. Nell, 140 Mo. 639, were both partition proceedings, and the respective plaintiffs had previously recovered their interest in the respective premises by ejectment.

It was held in the first of them, that partition proceedings were a practical mode of enforcing the judgment by the tenant in common, and they are for that reason not authorities on the question. A portion of the foregoing cases are cited to sec. 743, Sedgwick and Wait on Trial of Titles to Land. (6) If a judgment in ejectment breaks the continuity of an adverse possession, or, which is the same thing, suspends the running of the statute, it does so when it is rendered, and a failure to take possession under it can have no bearing on the subject, for if the continuity of an adverse possession is broken for a single day, it must begin to run anew and run for the full statutory period in order to be effective. Brolaskey v. McClain, 61 Pa. St. 166; Armstrong v. Morrill, 14 Wall. 141; Groft v. Weakland, 34 Pa. St. 308; Frederick v. Searle, 5 S. & R. 239; Olwine v. Holman, 23 Pa. St. 284; State v. Bishop, 22 Mo. App. 440.

GANTT, J.—An action in ejectment in statutory form was commenced January 26, 1894, for a parcel of ground on Moore street in block 211 of the city of St. Louis, twenty-five feet front or width, fifty feet in length or depth, being the south part of lot 4 in Moore's addition to said city, and alleged to be occupied by house number 12 on Moore street. Mrs. Emilie Uhri and Miss Ida Rose, the sole heirs at law of Dr. Edward Rose, are the defendants who assert title, and the other defendants are their tenants.

Plaintiff claims under a tax deed and mesne conveyances from the grantee therein.

The heirs of Dr. Rose claim under the foreclosure of a deed of trust given by John C. Blech, the common source of title, executed prior to the assessment and levy of the taxes for which the judgment for taxes was obtained.

Plaintiff's chain of title is as follows:

A sheriff's deed to Stephen Turner, dated and acknowledged May 11, 1882, under an execution issued on a judgment in favor of the State at the relation of Hudson, collector, v. John C. Blech, Charlotte Gebhart and Michael Geary, for taxes of 1879. From the files in said case, it appeared that summons was issued August 13, 1881, returnable to October term, 1881, of the circuit court of the city of St. Louis, and was personally served on John C. Blech, August 25, 1881, and a *non est* as to defendants Gebhart and Geary.

There was an allegation in the petition that Blech had conveyed the property to Michael Geary, as trustee, to secure a debt to Charlotte Gebhart, which deed of trust was recorded in book 340, p. 316, of the recorder's office.

On October 13, 1881, an order of publication was made on the *non est* return, for the reason, that the ordinary process of law could not be served on said Gebhart and Geary. The order recited the pendency of the suit for taxes of 1879 to the amount of $22.10 upon the following real estate, to-wit, "A lot of ground on Moore street in the city of St. Louis, in city block 211, twenty-five feet in front, or width, and fifty feet in length, being the south part of lot number 4 in Moore's addition to said city." The order was returned February term, 1882. The order was published four times in the Post-Dispatch newspaper; the first insertion was December 5, 1881, the second December 12, the third December 19, and the fourth December 26, 1881. Judgment was taken by default March 22, 1882. Execution issued April 8, 1882. Sale was advertised May 10, 1882, and was sold on that day to Stephen Turner for $305, which after satisfying the judgment and costs, left a surplus of $225.62.

These records were offered by defendant to show that "Mike Geary" and Dr. Rose were not parties to the suit.

Plaintiff next offered a warranty deed from Stephen

Turner and wife to Mary E. Tanner, dated May 18, 1882. On May 19, Mary E. Tanner by deed of trust conveyed this lot to M. P. Jones, trustee for W. M. Dickey, to secure note for $1,500. This deed of trust was afterwards foreclosed on five days' public notice, and the lot conveyed to J. V. Hilton, October 25, 1883.

By quitclaim, Hilton conveyed to John Oliver, *December* 13, 1883; filed for record *December* 17, 1884. John Oliver conveyed to plaintiff Sanford, August 20, 1890, deed recorded August 26, 1895.

Greffet, a real estate agent, testified he got the surplus of the tax-sale, and gave it to Blech. He fixed the rental at $22 to $25 a month, if kept in good condition, but the house was thirty-five years old and tenanted by negroes.

On the part of defendant the evidence was, first, proof that Mrs. Uhri and Miss Ida Rose were the sole heirs at law of Dr. Edward Rose, who died February 12, 1887; that Dr. Rose held the note and deed of trust given by John Blech to Mike Geary for the use of Charlotte Gebhart; that Blech paid the interest to Dr. Rose up to 1883; that the deed of trust from Blech to Geary for Gebhart was foreclosed May 17, 1883. Twenty-two receipts for interest paid by Blech to Dr. Rose, beginning September 6, 1869, and ending October 12, 1880, were read in evidence. The note of Blech for $1,500, payable five years after date, to the order of Charlotte Gebhart was read in evidence; also assignment thereof by Charlotte Gebhart to Dr. Edward Rose. The same was also credited by Isaac Mason who acted as trustee in the foreclosure, May 17, 1883, with $942.08, net proceeds of the sale of the lot on that day.

The deed of trust was also assigned by Charlotte Gebhart to Dr. Rose. This deed of trust was foreclosed May 17, 1883, and the property deeded to Dr. Rose.

On June 13, 1883, Dr. Rose brought ejectment for this lot against Isaac H. C. Curry, Lavina Curry, formerly Haskell, Moses Nevitt and Simon Kane.    Personal service was had on all defendants.    Judgment was obtained by him December 12, 1883, for possession, and $166.66 damages, and monthly rents fixed at $25 a month.    Execution issued thereon January 23, 1884, and writ of possession executed January 28, 1884.    After the defendants in ejectment were served they attorned to Dr. Rose and continued as his tenants down to a comparatively recent time, when other tenants of defendant took possession and held until the commencement of this suit, January 26, 1894.

One Albert Isbell, among others, became a tenant under Dr. Rose of said premises after the ejectment suit.

Manetho Hilton testified that *he thought* one Martha Stewart paid him a months rent January 24, 1884.    This woman was not a party to the ejectment suit and judgment rendered thereon December 12, 1883.    Hilton says he represented John Oliver who obtained a deed to the lot the day after Dr. Rose obtained his judgment in ejectment.    He testified that not a cent of rent was paid to him or Miss Tanner or John Oliver after January 24, 1884.    Witness had been applied to to bring this suit, but he refused.    At another time this witness stated that Martha Stewart paid rent through Wolff & Co. up to January 24, 1884. Other evidence shows that Wolff & Co. were the agents of Dr. Rose, and after his death, of his daughters.

Upon the facts disclosed, little doubt can exist as to the merits of this case.    They are all against the plaintiff.

The tax-bill under which he claims appears to have been handed around from one to another as convenience might dictate.    With absolute knowledge of Dr. Rose's possession of the lot in dispute from January, 1884, no effort was made to dis-

possess him in his lifetime. He remained in possession until his death in 1887, when his title and possession devolved upon his two daughters, Mrs. Uhri and Miss Ida Rose. With no notice of an adverse claim, they have been permitted to receive the rents with which they are now charged. According to plaintiff's own theory, he and those under whom he claims have permitted an adverse, open and peaceable possession to remain in defendants and their father for ten years, lacking one or two days, accordingly as they count the time. Hilton, for whom the parties seem to have held the tax title says he declined to bring this suit. Unless it was held for him his self-denial is not apparent.

The vital question, as the answer is now framed, is whether plaintiff was not barred by the statute of limitations of ten years.

As already said, plaintiff's own evidence establishes that Dr. Rose and his daughters as his heirs had been in the actual, open, adverse possession of the lot in suit for ten years prior to the commencement of this suit, lacking one day.

Defendants, insist, however, that Dr. Rose having foreclosed the deed of trust given him by Blech, the common source of title, and obtained his trustee's deed on May 17, 1883, and having thereafter brought his action of ejectment against the tenants in possession and obtained his judgment for the possession of the lot December 12, 1883, and followed it up by his writ of possession and ouster on January 28, 1884, whatever possession, if any, plaintiff had by reason of the occupancy of said tenants, was interrupted from the date of that judgment, and the subsequent possession has been shown to be out of plaintiff since that date.

It must be kept in view that plaintiff and those under whom he claims assert possession through the defendants in the ejectment suit of Dr. Rose against Curry et al. In that

suit Dr. Rose obtained judgment on December 12, 1883, for the possession of the lot in question.

After the rendition of that judgment the defendants therein were estopped from longer remaining in possession as tenants of J. V. Hilton. Moreover, Hilton's claim expired December 13, 1883, by his quitclaim to Oliver. These tenants not only did not turn over, but were estopped from turning over the possession to Oliver as against Dr. Rose, whose judgment in ejectment and writ with the possession thereunder were a constant assertion of adverse title from that day up to the bringing of this action over ten years thereafter, and Oliver and Sanford were never at one moment in lawful possession of the lot during all that time.

It has been often ruled that a judgment in ejectment against one in adverse possession, breaks the continuity of the adverse possession. It was ruled, after careful examination by this court in Banc, in Snell v. Harrison, 131 Mo. 495, that a valid subsisting judgment in ejectment against one in possession, and claiming adversely, interrupted the peaceable possession of the defendant and suspended the running of the statute in his favor, overruling Mabary v. Dollarhide, 98 Mo. 198, so far as a different doctrine was announced on this point. The necessary result of that decision was to invest the plaintiff in the ejectment judgment with possession in law of his undivided part of the lands recovered. In Estes v. Nell, 140 Mo. 639, the question again arose as to the effect of a judgment in ejectment as between the parties and privies thereto, and it was held "it was not necessary in order to suspend the statute of limitations as against the plaintiff (in ejectment) that a writ of restitution should have issued, or that they should have taken possession under that judgment. The running of the statute was interrupted and did not run against plaintiffs

during the life of the judgment, although no writ of restitution issued."

This last case correctly defines the effect of a judgment in ejectment. It is *res adjudicata* as to parties thereto and the matter adjudicated upon until set aside or reversed, or its legal effect destroyed by the result of another action of ejectment for the same land by the parties or their heirs who were defendants therein. While it does not prevent a defendant from yielding possession and bringing another action in ejectment to try the title, yet until he does so, he and his privies are bound thereby.

What, then, was the effect of the judgment of December 13, 1883, upon the possession of J. V. Hilton, asserted though the occupancy of Curry et al., the defendants in that judgment? We answer, that from the date of that judgment and during its life, the said defendants were conclusively estopped from recognizing Hilton as their landlord, or continuing his possession by any act of theirs, in opposition to the rights of Dr. Rose, the plaintiff therein. Unless this is so, it is idle to say that a judgment of a court of competent jurisdiction has any binding force upon the parties thereto.

While that judgment did not bar an action of ejectment in favor of Oliver, who purchased from Hilton the next day after the judgment, upon no sound principle of law can it be asserted that Oliver's quitclaim deed transferred to him the possession which had been adjudged to Dr. Rose, nor could the defendants therein whose possession had been adjudged tortious by the court, by a surreptitious payment of rent, put Oliver in possession, as it is well settled that a judgment in ejectment binds not only those against whom it is rendered, but all others who come in under them. Nor is there any legal evidence that they attorned or attempted to attorn to Oliver.

Within the contemplation of law, whatever rights Oliver

may have had to bring his own action of ejectment, from the date of that judgment, Curry et al., the defendants in the ejectment were estopped from denying they held under Dr. Rose, and their possession, as between him and them, was his possession and this continued up to the time they attorned to Dr. Rose, which they were authorized by our statute to do. As is said in Prior v. Scott, .87 Mo. 309, "Where the prior possessor has been turned out by an opposing claimant in judicial proceedings, all presumptions in his favor, growing out of said prior possession, if not terminated, are at least shifted in favor of his successful opponent."

It results, then, that upon the admitted state of facts shown by this record, whatever possession those under whom plaintiff claims, held through the defendants in that ejectment, passed to Dr. Rose by his recovery in that case, and it has remained in him and his heirs continuously since the twelfth of December, 1883, the plaintiffs and those under whom he claims have been ousted by an adverse possession for more than ten years and the court erred in not giving defendants' first instruction.

II.   One other point only needs to be noticed.

It was attempted to show a possession of one room by one Martha Stewart. As to this claim it is sufficient to say that every presumption is against the bona fides of this claim.   At most it would not affect the recovery of all the premises outside of that room, and still the judgment must have been for defendants for all save that room, but the evidence is wholly insufficient to sustain a recovery outside of that consideration for the reason that it utterly fails to designate the room which it is alleged she occupied at that time.

Moreover, there was no proof that she was a tenant of any part of said building.   Nagle says Stewart and Curry were one.   Every presumption upon the facts disclosed in evi-

dence is, that if she was in the house, she was there in subordination to Curry, who was sued and ejected. Nothing was attempted to be shown further than she was there in the house, and on one occassion paid Wolff & Co. some rent.

The payment of rent is a fact going to the establishment of a tenancy, but by no means sufficient in or of itself. Out of all the owners of this tax title it surely would have been an easy matter to have shown that Martha Stewart was a lessee of that building at the time the ejectment was brought. [Taylor on Landlord and Tenant, sec. 23.]

All the evidence tending to show Martha Stewart was a tenant of J. V. Hilton or Oliver amounts at most to a scintilla and can form no basis of recovery in an ejectment wherein the burden is on the plaintiff. As the whole title of the respective parties is before the court, no good purpose can be subserved by another costly trial, and as in our opinion plaintiff can never recover against defendants, the judgment is reversed with directions to enter judgment for defendants.

All concur.