## IDALIA REALTY AND DEVELOPMENT COMPANY v. W. W. NORMAN, Appellant.

### Division One, June 30, 1914.

1. **EJECTMENT: Second Suit Controlled by Prior Adjudication.** While a judgment in ejectment is not a bar to another suit for the same premises, the action being only possessory, yet, when the title is in issue and the right of possession is only an incident, it has all the consequences of an ordinary suit and a former adjudication is conclusive upon a second suit between the same parties and upon the same evidence.

2. ————: **Petition: Amendment: Continuance.** Plaintiff in its original petition in ejectment alleged that, being entitled to the possession, the defendant afterwards entered and withheld the premises, to plaintiff's damage in the sum of $100. The monthly rental was laid at $100. *Held*, that there was no error in the plaintiff's amending its petition before the trial, seven months later, to read, being *so* entitled to the possession, the defendant afterward entered and withheld the premises, to plaintiff's damage in the sum of $800; and defendant was not entitled to a continuance on that ground.

3. **LANDLORD AND TENANT: Tenancy from Year to Year: Noice to Quit.** The notice to quit necessary to terminate a tenancy from year to year, under Sec. 7882, R. S. 1909, does not have to be accompanied by the deed under which the landlord claims title.

4. **EVIDENCE: Document: Possession of Opposite Party: Read rrom Record.** In accordance with Sec. 2818, R. S. 1909, providing that "every instrument in writing, conveying or affecting real estate, which shall be acknowledged or proved, etc., may be read in evidence, without further proof," the plaintiff, after testifying that the original was in defendant's possession, could read from the recorder's book the record of a lease without

giving the defendant notice to produce it, especially where, after the record was before the court and jury the defendant was examined at length by his counsel as to the contract and his possession under it, without questioning the correctness of the copy, the execution of the instrument, or his custody and control of the original.

5. EJECTMENT: Possession: Deed: Summons: Lis Pendens. Where the defendant in ejectment admits that he held possession until December 12, 1911, but on that date he deeded his interest to a corporation controlled by him, and there is no further showing of change of possession, the trial court was right in instructing the jury to find for plaintiff, alias summons having been ordered against defendant by the court December 7, issued December 13, and served December 15. Whatever the corporation took by defendant's deed, if anything, it took *pendente lite*, with knowledge, actual as well as constructive, of the pendency of the suit, and it was not necessary to make it a party to bind it by the judgment.

6. ————: Mesne Profits: Transfer of Possession. One sued in ejectment by one entitled to the possession cannot escape liability for mesne profits by surrendering the possession to another not the agent of plaintiff.

Appeal from Stoddard Circuit Court.—*Hon. W. S. C. Walker*, Judge.

AFFIRMED.

*Sheppard & Green* for appellant.

(1) The court erred in refusing to give for defendant instructions in the nature of peremptory instructions to find for the defendant. The contract offered in evidence by plaintiff between S. B. Hunter and the defendant W. W. Norman, is not in contemplation of law a lease, but said contract operated legally to transfer to the defendant a beneficial right in the land itself, namely, the right to occupy said land and remove timber therefrom until his sawmill located thereon ceased to be operated and was removed from the land in controversy, and, therefore, the court should have directed a verdict for the defendant. Realty &

Development Co. v. Norman, 232 Mo. 663; Hobart v.
Murray, 54 Mo. App. 249; Meeks v. Mining Co., 141 Mo.
App. 661; Railroad v. Railroad, 135 Mo. 173. (2) The
court erred in permitting plaintiff to amend its peti-
tion by interlineation over defendant's objections and
after the trial had begun; and in any event the court
erred in refusing to grant defendant a continuance up-
on said amendment being made. Street v. Bushnell, 24
Mo. 328; Pence v. Gabbert's Admr., 70 Mo. App. 201;
Joyce v. Growney, 154 Mo. 263; Ensworth v. Barton,
67 Mo. 622; Sec. 1848, R. S. 1909. (3) The court erred
in admitting in evidence over defendant's objections
the record of the contract between plaintiff's grantor
and defendant; the original contract was the best evi-
dence and there was no testimony as to its being lost
or destroyed; furthermore, unless it conveyed an inter-
est in land, it was not admissible to record. Sec. 1944,
R. S. 1909; McLain v. Winchester, 17 Mo. 49; Mosher
v. Bacon, 229 Mo. 338; Fitzmaurice v. Nirney, 214 Mo.
610; Orchard v. Collier, 171 Mo. 399. (4) The notice
to quit possession offered in evidence by plaintiff
should have been excluded by the court as it was not
accompanied at the time of service by the original
deed under which plaintiff claimed title. Secs. 7882,
7909, 7910, R. S. 1909. (5) The court erred in refus-
ing to admit in evidence the deed from the defendant
to Norman's Land and Manufacturing Company as
well as the incorporation papers of said company; all
of which were executed and recorded prior to the is-
suance of the summons which was served upon defend-
ant. Sec. 1756, R. S. 1909; White v. Reed, 60 Mo. App.
380; Seever v. Lincoln, 21 Pick. (Mass.) 267; Jack-
son v. Brooks, 14 Wend. 649; Howell v. Shepard, 48
Mich. 472; Burdick v. Green, 18 Johns. 14; Vischer
v. Gansevort, 18 Johns. 496; Mason v. Cheney, 47 N.
H. 24. (6) The court erred in refusing to admit in
evidence the alias summons issued in this case as well
as the memoranda made by the clerk showing that the

original summons was held up by plaintiff's attorney; while the date of filing the petition ordinarily determines the date of the institution of the suit, yet that is not true where the summons is delayed by the action of plaintiff's attorneys. Sec. 1756, R. S. 1909; White v. Reed, 60 Mo. App. 380; Seever v. Lincoln, 21 Pick. (Mass.) 267; Jackson v. Brooks, 14 Wend. 649; Howell v. Shepard, 48 Mich. 472; Lumber Co. v. Wright, 114 Mo. 326; Lynch v. Railroad, 30 Atl. (N. J.) 187. (7) The court erred in giving to the jury plaintiff's instruction in the nature of a peremptory instruction to find for the plaintiff; it is error to give a peremptory instruction when there are any facts in the case which are not admitted. Milliken v. Comm. Co., 202 Mo. 655; Bank v. Hammond, 124 Mo. App. 177; Wolff v. Campbell, 110 Mo. 114; Gregory v. Chambers, 78 Mo. 298. (8) The damages assessed by the jury are excessive and defendant should not have been held liable for the monthly rents and profits. Defendant could only be held liable for damages until the time possession was transferred by him to Norman's Land and Manufacturing Company. 15 Cyc. 211; Gillaspie v. Bank, 35 La. Ann. 779; Ryers v. Wheeler, Labor (N. Y.), 389; Mitchell v. Freedley, 10 Pa. St. 198; New Orleans v. U. S., 131 U. S. 220; New Orleans v. Christmas, 131 U. S. 191; Edgerton v. Clark, 20 Vt. 264; Gilman v. Gilman, 11 N. Y. 265; Gardner v. Graniss, 57 Ga. 539.

*Wammack & Welborn* for respondent.

(1) Defendant, W. W. Norman, was a tenant from year to year and his tenancy was properly terminated by the notice to quit served on him sixty days before the end of the yearly period. Realty & Development Co. v. Norman, 232 Mo. 663. (2) The rule of *stare decisis* governs the construction of the lease between Norman and Hunter. McAnaw v. Clark, 167 Mo. 443;

Potter v. Adams, 143 Mo. 665. (3) Permitting plaintiff to amend its petition was a matter purely within the discretion of the trial court. Peterson v. Railway, 211 Mo. 516. (4) It was not error for the court to admit into evidence the record of the lease between Norman and Hunter. R. S. 1909, secs. 2818, 2819; Boogher v. Neece, 75 Mo. 383; Barton v. Murrain, 27 Mo. 238; Gilbert v. Boyd, 25 Mo. 27. (5) A lease, whatever its terms, affects real estate. Jennings v. Sparkman, 39 Mo. App. 663. (6) It was not necessary for plaintiff to exhibit to the defendant its deed from Hunter when it gave the notice to quit. Green v. Railroad, 82 Mo. 653; 18 Am. & Eng. Ency. Law (2 Ed.), p. 395; Thamms v. Hamburg, 2 Brews. (Pa.) 528. (7) The statutes cited by appellant to the effect that the original deed must be exhibited do not apply in this case. Tucker v. McClenney, 103 Mo. App. 318. (8) The testimony regarding the transfer by Norman of the possession of the premises to the Norman Land & Manufacturing Company was not competent, for the reason, that said company was not incorporated nor the transfer made to it until after the order for the process by which defendant was served had been obtained. Sec. 1756, R. S. 1909. (9) The court correctly instructed the jury to find for the plaintiff for the possession of the premises. Smith v. Ponath, 17 Mo. App. 262; Morgan v. Durfee, 69 Mo. 476; Wolff v. Campbell, 110 Mo. 114; Bank v. Hainline, 67 Mo. App. 489; Howard v. Hurst, 156 Mo. App. 211; May v. Crawford, 150 Mo. 504; Furber v. Bolt & Nut Co., 185 Mo. 311; Hendley v. Globe Refinery Co., 106 Mo. App. 27. (10) When a tenant denies his landlord's title no notice to quit is necessary. Lyon v. LaMaster, 103 Mo. 612; Amick v. Brubaker, 101 Mo. 473; Cook v. Penrod, 111 Mo. App. 140; Stevens v. Brown, 56 Mo. 23. (11) Plaintiff is entitled to recover from defendant the value of the rents and profits while the possession of the premises is held either by himself or

the Norman Land & Manufacturing Company. Maguire v. Lebeaume, 7 Mo. App. 179; Hughes v. Carson, 90 Mo. 399; Adams v. Gilchrist, 63 Mo. App. 639; Tyler on Ejectment (1 Ed.), p. 840; West v. Hughes, 1 Har. and Johns. 574.

BROWN, C.—This is ejectment. Petition filed in the Stoddard Circuit Court August 21, 1911, and original summons issued August 25, 1911, but was not served. Alias summons issued December 13, and served on defendant December 15.

The original petition is, omitting caption and signature, in words and figures following:

"Plaintiff states that it is a corporation organized and existing under the laws of the State of Missouri.

"Plaintiff states that on the 16th day of August, 1911, it was entitled to the possession of the following described premises, to-wit: The southeast quarter of the southeast quarter of section 12, in township 25, range 11 east, in Stoddard county, Missouri. And being entitled to the possession thereof, defendant afterwards, to-wit, on the 17th day of August, 1911, entered into such premises and unlawfully withholds from the plaintiff the possession thereof to its damage in the sum of one hundred dollars.

"Plaintiff further states that the monthly value of rents and profits of the premises is one hundred dollars; wherefore plaintiff demands judgment for the recovery of said premises and one hundred dollars damage for unlawfully withholding the same from plaintiff, and one hundred dollars for monthly rents and profits from the rendition of the judgment until the possession of the premises is delivered to the plaintiff."

It contained another count which was afterwards dismissed and is immaterial to the questions raised here.

On March 28, 1912, the plaintiff, by leave of court, amended its petition by increasing the damages demanded to $800, and by inserting the words "so" between the words "being entitled." The cause was tried at the March term, 1912, resulting in a directed verdict for the plaintiff for possession of the property, and damages assessed by the jury at $700 and monthly rents and profits assessed by them at $100.

The defendant objected to the action of the court in permitting the amendment.

On the trial S. B. Hunter, president of plaintiff, testified that the defendant went into possession of the land under a contract with him of which there was but one copy, which was delivered by him to defendant, and that on one occasion since, Mr. Norman had let him take it and he had returned it, and had not seen it since. The plaintiff then offered in evidence the record of the same contract in book 36 of the deed records of Stoddard county, with the acknowledgment and certificate of filing thereon. The contract is as follows:

"This agreement made and entered into this 16th day of August, A. D. 1899, by and between Stephen B. Hunter, of the county of Scott and State of Missouri, party of the first part, and W. W. Norman of the county of Cape Girardeau and State of Missouri, party of the second part.

"Witnesseth, that the said party of the first party, in consideration of the sum of thirteen hundred dollars to him paid by the said party of the second part, has this day sold unto the said party of the second part, does by these presents sell, assign and transfer unto the said party of the second part all timber, tramroad and right of way on the following lands, to-wit: The west half of section 18, east half and the east half of the west half of section 19, and northwest quarter of the southwest quarter of section 19, and the east half,

259 Mo.—40

and the east half of the west half of section 30 and the east half, and the southwest quarted of section 31, all in township 25 north of range 12, in the county of Stoddard and State of Missouri; the said first party reserves the right to clear and fence lands in the said section 18, and to deaden timber on all the above lands after August 1, 1902; the said first party also leases unto the said second party for the term of five years, free of rent except the taxes, all of the southeast quarter of the southeast quarter of section 12, in township 25, range 11 in said county and State, except two houses, which are used by tenants cultivating lands at .or near Hunter's switch, together with the privilege of renting the last-named lands at yearly rent of $25 per year after the expiration of this contract until mill is removed, this contract to end in five years after this date. This contract is subjected to a former contract made with J. B. Livesay by S. B. Hunter, and assigned to Platt B. D. G. Co.

"In testimony whereof, the said parties to these presents have hereunto, and also to copy hereof, set their respective hands at . . . on the date first above written.

"STEPHEN B. HUNTER,
"W. W. NORMAN."

The defendant objected on the ground that the original was the best evidence, that there was no proof that it had been lost or destroyed, and that its record was not authorized by the statute relating to that subject; and excepted when it was admitted by the court. Plaintiff then introduced, against defendant's objection on the ground that it was not sufficient in form and not accompanied by the deed under which plaintiff claims title, the following notice:

"To W. W. Norman.

"You are hereby notified that the undersigned desires to terminate your tenancy of its property, namely:

"The southeast quarter of the southeast quarter of section 12, township 25, range 11, in Stoddard county, Missouri. Also all tramroad and right of way and other lands now used or occupied by you on the following lands, to-wit:

"The west half of section 18, the east half and the east half of the west half of section 19, and the northwest quarter of the southwest quarter of section 19, and the east half and the east half· of the west half of section 30, and the east half and the southwest quarter of section 31, all in township 25 north, range 12, in said county and State, now used and occupied by you as its tenant under the lease made by Stephen B. Hunter to W. W. Norman, dated August 16, 1899. And you are hereby notified and required to surrender and deliver up to the undersigned as assignee of Stephen B. Hunter, and present owner of said property, the full and complete possession of all of said premises at the end of the present year, August 16, 1911.

"You are further hereby notified that said Stephen B. Hunter has conveyed all of said lands, to the undersigned by deed, duly recorded in book 41, page 424, of the deed records of Stoddard county, Missouri, a copy of which deed is hereto attached.

"Done this 14th day of June, 1911.

"The Idalia Realty & Development Company, a corporation.

"By Stephen B. Hunter,
"President."

Service of this on June 14, 1911, by the delivery of a copy to the defendant was proven by the testimony of A. L. Harty. Plaintiff also introduced a general warranty deed from Mr. Stephen B. Hunter to the plaintiff, dated January 27, 1904, conveying, among other lands, the tract here in controversy. This was duly recorded March 8, 1904.

Mr. S. B. Hunter testified that defendant was in possession of lands in controversy and had been since

the latter part of 1899 under the contract in evidence; and plaintiff introduced evidence tending to show that the rental value of the property with its buildings placed thereon by defendant was $100 per month, but aside from such buildings the rental value would be $25 per month.

The defendant testified that he was not in possession of the land but that it was in possession of the Norman's Land and Manufacturing Company, a corporation, and that said corporation was in possession of the premises when the summons was served on him; that he was president and general manager of the corporation; that at the time of making the contract he had a mortgage from one J. B. Livesay covering this land and a sawmill located thereon owned by Mr. Livesay, and it was then agreed between Hunter and himself that he should have the use of the premises on which the sawmill was located as long as the mill was there; that he did not take possession of the land under the contract but secured possession through a suit brought against Houston & Company who were in possession for some two or three months after the contract was made. After he went into possession he went to work running his sawmill and building houses, claiming the right under the contract to stay there as long as he could get timber with which to run his sawmill, and that he did not know that Hunter denied his right to stay there as long as the mill should remain on the premises, until the first five years had expired. That he had always claimed to hold possession of the lands under the contract with Hunter, with the understanding that he would have the use of the property as long as the sawmill was located thereon: that he claimed to abide by the contract; and that he made the deeds to his corporation before the summons was served.

He then introduced a deed from himself and wife to Norman's Land and Manufacturing Company dated

December 12 ,1911. He also offered deed from Henry
H. Bedford and wife to J. B. Livesay dated June 7,
1897, and duly recorded, which was excluded upon
plaintiff's objection and defendant excepted; also two
deeds of trust from J. B. Livesay and wife to Imid
Weber, trustee for Stephen B. Hunter, and to Stephen
B. Hunter, trustee for W. W. Norman, respectively,
both of which were excluded on plaintiff's objection,
and defendant excepted. He then offered the certifi-
cate of incorporation of the Norman's Land and Man-
ufacturing Company, dated the 8th day of December,
1911, and recorded December 12, 1911, which was ex-
cluded upon plaintiff's objection and defendant ex-
cepted. He then offered the alias summons and re-
turn for the purpose of showing that the possession
of the land at the time of its issue and service was
not in W. W. Norman, but was in the corporation.
These were also excluded and the defendant excepted.
Also the Stoddard county deed records, showing that
the articles of incorporation of the Norman's Land and
Manufacturing Company had been filed November 22,
1911, which was also excluded and defendant excepted.

On the original summons in this case were the fol-
lowing memoranda: "Hold until instructed by Wel-
born;" "This summons was never delivered to sher-
iff;" "Charles D. Wilson, Clerk, per Crosser." The
clerk testified that the memoranda indicated just what
they said. He would have no knowledge of it unless he
had seen the memoranda. That he could not keep track
of these little things unless he made some memoranda.
Mr. Crosser, the deputy clerk, testified that it was evi-
dent that there was not sufficient time to get service
for the September term for some reason and that Mr.
Welborn had instructed him to hold it until further
notice, but he did not remember anything about it,
and he was not sure whether further notice was given
or not. These memoranda were excluded and defend-
ant excepted. Norman testified that he had heard be-

fore the transfer of the land to the Norman's Land
and Manufacturing Company that this suit was filed
but that he did not make the transfer and incorporate
the company for the purpose of avoiding service.
Cross-examined he said: "I heard it some way but
don't remember how I heard about it. I think that
was the first suit, but it was too late to get it into
court." The capital stock of the Norman corporation
was two hundred shares of one hundred dollars each,
subscribed as follows: W. W. Norman, 180 shares,
Mena Norman, his wife, 10 shares, J. Raymond Kinder,
10 shares. It was paid up by the personal property,
including lumber, milling and mercantile goods and
fixtures, milling machinery, and logging and lumber
outfit and supplies, and not in money.

The alias summons served on the defendant was
ordered by the court December 7, 1911.

At the close of all the evidence the defendant asked
for a peremptory instruction in his favor, which was
refused, and he excepted. The court then gave the
following instruction for the plaintiff:

"The court instructs the jury that under the plead-
ings and evidence, as adduced in this case, the finding
must be for the plaintiff for the possession of the
premises sued for, and you will assess as damages for
the plaintiff the value of the rents and profits of the
said premises from the date of the institution of this
suit until this time, not to exceed the sum of $800, and
you will also determine in your verdict the value of
the monthly rents and profits of said premises, not
to exceed one hundred dollars a month."

To the giving of the aforesaid instruction coun-
sel for defendant then and there duly objected and
excepted.

The jury returned the following verdict, upon
which the judgment was entered:

"We, the jury, find the issues joined in the above-
entitled cause for the plaintiff, for the possession of

the property described in the petition, and assess the damages sustained by the plaintiff by the detention of said premises at the sum of seven hundred dollars; and we assess the monthly value of the rents and profits at the sum of one hundred dollars.''

I. These parties brought this same contract to us for our consideration and construction in connection with Idalia Realty and Development Company v. Norman, 232 Mo. 663. At that time, as we said through LAMM, J., they did not ask the case to ride off on any of the nice distinctions indulged by courts in determining whether the clause before us then and now is a lease or a mere contract for the renewal of a lease, but they submitted in all candor whether it was to be construed, in the light of correct legal principles, as contemplating or agreeing to a tenancy for years. We decided that it was not. The parties then put it up to us to decide what it was, the plaintiff claiming that the defendant became, from the expiration of five years, a mere tenant at will, and that his tenancy had been terminated by a notice to quit given upon that theory. The defendant, on the other hand, contended that if it were not a tenancy for years it was a tenancy from year to year, and required sixty days' notice to terminate it. We were convinced by his masterly logic, and decided that very point for him; and he went out of court satisfied, as we supposed, with victory won on the favorable grounds of his choice. We were mistaken however. Perhaps it is not too much to say that we are disappointed to see him here with the same paper and the message that he has ''made a fuller investigation into this contract, and the conclusion is reached that *the contract is not a lease but the transfer of a beneficial interest in the land itself.*'' The italics are his. We cannot agree with the sentiment they express for two reasons: First, we are

*Margin note: Ejectment: Second Suit: Former Adjudication.*

satisfied with the conclusion at which we then arrived after mature consideration and careful investigation; and, second, the former adjudication of the same question in the former suit between the same parties, upon the same evidence (the paper itself), is, even though the previous action was ejectment, conclusive in this. While a judgment in an ejectment suit is not a bar to another suit for the same premises, the action being only possessory, yet when the title is in issue, and the right of possession only an incident, it has all the consequences of an ordinary suit, when the parties are the same, the land is the same, and the evidence in support of the respective titles is the same. [McAnaw v. Clark, 167 Mo. 443; Potter v. Adams, 143 Mo. 665.]

II. It is urged by the defendant that the court committed error in permitting the plaintiff to amend its petition at the trial by inserting the word "so" between the words "being entitled;" and **Amendment of Petition: Continuance.** by substituting the word "eight" for the word "one" before the word hundred in stating the amount of the damages, so as to make the particular sentence in which they occur read as follows: And being *so* entitled to the possession thereof the defendant afterward, to-wit, on the 17th day of August, 1911, entered into such premises and unlawfully withholds from plaintiff the possession thereof to its damage in the sum of *eight* hundred dollars. When this amendment was allowed over the defendant's objection, he asked for a continuance because his counsel had made no preparation to meet the demand of eight hundred dollars, thinking that one hundred dollars was a reasonable demand; also that he had no witnesses subpoenaed and was not prepared to meet the issue raised by the changed amount of damages. This request was denied by the court to which the defendant excepted. We are unable to un-

derstand the defendant's reasoning as to the important character of the first of these amendments. The grammatical construction of the principal parts of the proposition is not changed in the least, for if, without the word ''so,'' the clause meant that the *defendant* was entitled to possession, the meaning is not changed by the insertion of the word, except to convert it into a declaration that the *defendant* is *so* entitled to the possession. The statutory form is one of those grammatical anomalies of which the meaning is fixed by the context. It is substantially followed in the original petition. The change in amount of damages laid from $100 to $800 flowed necessarily from the lapse of time before the case went to judgment; the monthly rental being laid at one hundred dollars. The amendment went as a matter of course, and the continuance of the case would only have had the effect to make another like amendment necessary. There is no merit in this contention.

III. The defendant says that ''the notice to quit possession offered in evidence by plaintiff should have been excluded by the court as it was not accompanied at the time of service by the original deed under which the plaintiff claims title,'' citing sections 7909 and 7910, Revised Statutes 1909, to sustain his position.

*Tenancy from Year to Year: Notice to Suit.*

Those sections have no application whatever to the notice required by the terms of section 7882 to terminate a tenancy from year to year. They simply give the tenant the right, when asked to attorn to an apparent stranger by the payment of rent, to be satisfied of the right of the new landlord to make the demand; and it makes it the duty of the latter to so satisfy him, in the manner therein pointed out, before proceeding against him under those sections for nonpayment of rent.

IV. Defendant also contends that the copy of the lease between the plaintiff's grantor and the defendant, duly certified from the land records of the county, should not have been admitted because the original was better evidence, and there was no proof of its loss or destruction.

Written Evidence: Possession of the Party: Lease: Read from Record.

The statute provides that "every instrument in writing conveying or affecting real estate, which shall be acknowledged or proved, and certified as hereinbefore prescribed, may, together with the certificates of acknowledgment or proof, and relinquishment, be read in evidence without further proof." [R. S. 1909, sec. 2818.] The defendant insists that this instrument, which we have already held to be a lease for five years with a provision for its continuance from year to year, does not *affect* real estate. The utmost that construction or explanation can do is to reduce the proposition to its simplest terms; and in this case it is done by stating it in the plain and unambiguous words in which the Legislature has expressed its will. It again recognizes, as it had already done in section 2809, that some instruments which come within its provisions *convey*, while others only *affect*, the thing with which they deal, and without giving any intimation whether or not it might come within the former class, we have no hesitation in saying that it clearly falls within the latter. It follows that to entitle the record to be read in evidence in accordance with the terms of section 2819, it is not necessary to prove the loss or destruction of the original, or to give the opposite party, when it is presumed to be in his possession, notice to produce it. Of this we said at an early day, and here repeat: "The words of the statute 'not within the power,' should be construed as not within the control or possession of the party wishing to use a copy—that is, not in the possession of the party, his agent, servant or bailee, or other persons under his control. There-

fore, if the original is presumed to be in the hands of a third person, a .copy may generally be read without the preliminary oath or affidavit of the party wishing to use it.'' [Barton v. Murrain, 27 Mo. 235, 238-9.] In view of the plain provisions of the statutes to which we have referred, and the unmistakable expression of this court as to their force and effect, taken in connection with the fact that after this record was before the court and jury the defendant was examined at length by his counsel as to the contract and his possession under it, without questioning the correctness of the copy, the execution of the instrument, or his custody and control of the original, we do not hesitate to characterize the point as highly technical and without merit.

V. The real question suggested by the record is whether the defendant was in possession at the time the action was commenced. If this is not conclusively shown by the record, the court was in error in instructing the jury to find for the plaintiff. The defendant frankly admits that for a long time and up to December 12, 1911, he was in possession, but insists that the execution of his deed of that date to the corporation, Norman's Land and Manufacturing Company, automatically transferred his possession to the grantee. We say automatically, because both he in his testimony and his attorneys in their argument, insist upon the execution of the deed as the change in the possession—the act that instantly gave a new meaning to the same physical conditions that had existed for years, so that the occupant lost his character of an individual and became a corporation. There is no suggestion of any change in the conditions, nor in the application of the earnings or rents of the property. The transformation was so easy that it did not impress itself upon the defendant, and he testifies with reference to the build-

*Transfer of Possession: Deed.*

ings he had placed upon the land, "they must bring *me* about fifty dollars per month rent." The only evidence that the corporation had taken possession was the execution of the deed, and the statement of Mr. Norman of his legal conclusion that it was in possession; a conclusion which is for the court to draw from the facts in evidence. The action of ejectment is a purely possessory one. The possession against which it may be directed is actual and not constructive. It contemplates that the defendant may be in possession without right to the exclusion of the' one having the right, and is designed for the trial of that question only. Whether one's possession accrues simultaneously with the delivery of the deed under which he claims, is, in cases like the present, a question of fact and not of law.

It is, however, unnecessary in this case to place our decision on the ground just stated. It is only important in so far as it bears upon the question whether or not there was evidence that the Norman corporation was in possession of the premises on December 7, 1911, the day on which the plaintiff sued out the alias summons by securing an order of court for its issue. Whatever may have been the effect of the delay in delivering the original summons, or of the failure to deliver it for service at all, of which we express no opinion, when the plaintiff secured the order mentioned, it had done all that could be required of it for the "institution" of its suit according to the terms of section 1756, Revised Statutes 1909, and whatever the corporation acquired by the deed of Norman executed on the 12th day of December, 1909, was acquired *pendente lite* with knowledge, actual as well as constructive, of the pendency of the suit, and it was not necessary to make it a party to bind it by the judgment.

*Institution of Suit: Order for Alias Summons.*

There remains the contention that with the moulting of December 12, 1911, when Mr. Norman cast off his natural feathers and assumed the artificial plumage of the corporation, his liability for mesne profits ceased, and that the judgment is erroneous in the assessment of damages thereafter accruing. He cites numerous cases to the point, none of which have a tendency to support it. The rule is that when one in possession is sued in ejectment by one entitled, he may cease to add to the damages for which he is liable, by surrendering the possession to the plaintiff, but cannot do so by any sort of scheme to keep him out. It is not even sufficient in all cases that he withdraw from the possession. As is said in one of the cases cited by the defendant (Mitchell v. Freedley, 10 Pa. St. 198): "A party after ejectment brought, cannot escape a recovery for mesne profits, by privately withdrawing from the possession without notice to the owner."

*Mesne Profits.*

The judgment of the circuit court must be affirmed.

PER CURIAM.—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur.