CHARLES D. MATTHEWS, JR., Appellant, v. CITIZENS BANK OF SENATH (SUCCESSOR TO CHARLES E. AUSTIN AND LUTHER J. AUSTIN).—46 S. W. (2d) 161.

Court en Banc, February 6, 1932.

*Bailey & Bailey* and *Ward & Reeves* for appellant.

*McKay & McKay* for respondent.

STURGIS, C.—Ejectment for forty acres of land in Dunklin County. The case was tried in Pemiscot County on change of venue, resulting in a judgment for defendant, and comes to this court by appeal. The petition was filed September 19, 1925, and the trial had at the March Term, 1928, of the trial court.

The petition is conventional in form, against Charles E. and Luther J. Austin, but before the trial the Citizens Bank of Senath became the owner of the land in dispute and was by consent substituted as defendant.

The answer admits defendant's possession and denies the other allegations as to plaintiff's ownership and right to possession. The answer then sets up as an affirmative defense the ten-year Statute

of Limitations relating to real estate, claiming that defendant and those under whom it claims title have been in the open, continuous and adverse possession of the land for more than ten years next before the bringing of this action in ejectment, claiming a fee simple title, and that during said time plaintiff has not been in possession of said land or maintained any action for possession thereof.

In order to prove his title to this land, the plaintiff put in evidence the pleadings, proceedings and judgment in a suit to determine and quiet title to the same land brought by this plaintiff, Matthews, against John W. Greer, from whom defendant has acquired its title and possession. That suit was one to try and determine title under our statute, Section 1520, Revised Statutes 1929, was commenced in June, 1918, in the Circuit Court of Dunklin County, was transferred on change of venue to Mississippi County and there tried about 1920 or 1921, resulting in a judgment for defendant. On plaintiff's appeal to this court the judgment therein was reversed and the cause remanded. [Matthews v. Greer, 260 S. W. 53.] This judgment was rendered in this court on March 7, 1924. When the case again reached the circuit court, Charles E. and Luther J. Austin had become the owners of Greer's claimed title and were substituted as parties defendant and the case was retried in Mississippi County and judgment entered for plaintiff on October 24, 1924. Defendants again appealed to this court and the judgment of the circuit court was affirmed here July 30, 1927. [Matthews v. Austin, 317 Mo. 1021, 297 S. W. 366.]

At that time the present action in ejectment between the same parties and for the same land was pending in the circuit court. As stated, this plaintiff having finally won in his suit to determine title by the judgment of this court on July 30, 1927, the present case in ejectment for the same land was tried at the March Term, 1928, when defendant won the same land on its plea of adverse possession for ten years. The ten-year period was from 1915 to 1925 and covers the entire time of the pendency of the suit to quiet and determine title commenced in June, 1918, and finally terminated by the judgment of this court on July 30, 1927, which judgment affirmed the judgment of the Circuit Court of Mississippi County of October 24, 1924, awarding title to plaintiff. The period of adverse possession for ten years on which defendant won the present case in the trial court commenced some two years before the suit to determine title was brought and ended some four years after the judgment of the circuit court awarding the title to plaintiff, and a little more than a year after the affirmance of that judgment by this court.

The record and brief in this case are devoted largely to the question of defendant's adverse title under the Statute of Limitations.

Much evidence was introduced as to the commencement of the possession of defendant and those under whom it claims and the nature and extent of such possession. This question was submitted to the jury on instructions which are not criticised and the jury found for defendant. It will be sufficient to say here that defendant claims, and the evidence shows, that one John Small took actual possession of this forty-acre tract of timbered swamp land in 1911 or 1912, though his possession was not either extensive or substantial. In 1912 Small sold out to John W. Greer and one Dodd and made them a quitclaim deed sufficient to constitute color of title. Dodd and Greer divided the land in 1916, making quitclaim deeds to each other for half thereof, and Dodd soon sold to Greer by his quitclaim deed. These parties cleared the land of timber, put it in cultivation, and built habitable houses thereon in 1912 or 1913. Greer, under whom defendant claims by mesne conveyances, was in actual possession till 1921 or 1922, when his title and possession passed to the Austins, who were the original defendants in this suit.

The plaintiff does not so much question the fact or length of defendant's grantors' actual possession during the ten years or more, but insists that such possession was not adverse in that such grantors did not claim title in fee, but held under the belief and claim that the land was Government land and subject to homestead or purchase from the United States or from Dunklin County as swamp land. There was much evidence to that effect, but we do not think the court could have so held as a matter of law on plaintiff's request for a directed verdict. In fact, it was shown that plaintiff's predecessor in title, claiming under a patent from Dunklin County, brought suit in the Federal court in 1914 to test the title to this land, and defendant's grantor, Greer, employed a lawyer and so vigorously defended his claim to the land that such suit was dismissed in 1916. As we have said, the suit to determine title was then brought in 1918 and defendant's grantors vigorously contested that case both in the circuit court and in this court. There is other evidence of the claim or ownership by defendant's grantors, and if the only question in the case is the sufficiency of the evidence to make a jury question of defendant's claim of title by ten years' adverse possession, we would not disturb the jury's verdict on that question and would affirm the judgment.

The serious question in the case is the effect, if any, of the suit to determine title brought in 1918, not more than four or five years after defendant's adverse possession under claim of title commenced, and not finally decided in plaintiff's favor till a year or more after defendant's title became absolute under the Statute of Limitations, if that is to prevail. We say this because it is the settled law of this State that adverse possession for the period of ten years not

only bars recovery by one having a legal title, but destroys that title and vests a perfect title in the adverse holder. [Scannell v. American Soda Fountain Co., 161 Mo. 606; Kirton v. Bull, 168 Mo. 622; Franklin v. Cunningham, 187 Mo. 184.] If we affirm the present judgment, the result will be that we will hold that *defendant* acquired and had a fee simple title to this land under the Statute of Limitations at the time this court adjudged *plaintiff* to have such title in the suit to determine title.

It is claimed, however, and correctly so, that the question of adverse possession and its effect on the title was not invoked either by the pleadings or the evidence in the suit to determine title. That is necessarily true because at the time that suit was tried the first, and perhaps the second time in the circuit court, defendant's adverse possession was short of the statutory period necessary to vest in him a title to this land. A reading of the record on the two appeals in that case, Matthews v. Greer, 260 S. W. 53, and Matthews v. Austin, 317 Mo. 1021, 297 S. W. 366, shows that each party was then relying for title on separate patents from Dunklin County, and the question for decision was which patent conveyed the title, or rather whether the first patent, under which plaintiff claimed, was a valid conveyance of this title. This court held it was and adjudged plaintiff to be the owner. The trial court in that suit did not, however, award plaintiff possession as well as a good title, which it might or should have done. We say this because the petition to determine title in that case asked for possession as part of the relief prayed for, and this court in the case of Matthews v. Karnes, 9 S. W. (2d) 628, involving this same title, held that under the broad provisions of our statute to determine and quiet title, Section 1520, Revised Statutes 1929, the court can and should, at least when prayed for, afford a plaintiff out of possession full relief by awarding him possession of the land as well as establishing his title. This plaintiff was, therefore, clearly entitled to a judgment for possession as part of the relief granted by the Circuit Court of Mississippi County in its judgment of October 24, 1924, notwithstanding defendant's long adverse possession and claim of title under the Statute of Limitations. The judgment which the court did enter at that time, and which is affirmed by this court in Matthews v. Austin, supra, is to the effect that the court found from the testimony that the plaintiff is and was at the time of the institution of that suit (1918) the owner in fee of this land; that the defendant Austin, through his predecessor in that suit, Greer, claims some title in and to said land bottomed upon a quitclaim deed dated November 22, 1916, from John T. McKay, purporting to convey his interest in said land to John W. Greer, the original defendant therein, and that said claim so asserted was and is adverse and prejudicial to the plaintiff and

should be and is set aside and for naught held as a cloud upon plaintiff's title. It was then adjudged and decreed by the court that plaintiff be and he is adjudged and decreed the owner in fee of said land; that the deeds under which the defendant Charles A. Austin (defendant's grantor) now holds and asserts some title in and to said land should be and they are cancelled, set aside and for naught held as a cloud upon plaintiff's title; and "it is further ordered, adjudged and decreed that plaintiff is adjudged and declared to be the owner in fee in, to and of said land, and that the defendant has no right, title, claim or interest therein, and that defendant and his heirs and grantors be and they are forever precluded, estopped and enjoined from setting up or asserting any right, title or claim to said real estate under, by and through the title herein claimed by him."

It will be conceded that if the court had, as it should have done, awarded plaintiff a writ of possession, this controversy would have ended in plaintiff's favor, notwithstanding defendant was then and had been in adverse possession under claim of title for the full limitation period. Such judgment would have related back to the commencement of that suit in 1918. The defendant's claim is that because this was not actually done and the defendant ousted from possession, his adverse possession continued in all its vigor; that the subsequent possession tacked to the previous possession and the judgment for plaintiff in the quiet title suit had no effect whatever on the question of title by limitation when raised in this ejectment suit.

To this we do not agree. It is not essential to toll the Statute of Limitations that the claimant in possession be actually dispossessed. A judgment declaring his possession wrongful and denying his right to continue in possession may and does often have the same effect in interrupting the running of the Statute of Limitations as an actual cessation of the adverse possession. The possession itself may continue, but its continuity as an adverse possession conferring title is destroyed.

It is the law in this State that a judgment in ejectment which determines the title and right of possession in plaintiff's favor in and of itself, without the issuance of any writ or disturbance of the defendant's actual possession, changes the character of such possession from being adverse, for the time being at least, and stops the running of the Statute of Limitations at that point of time. [Sanford v. Herron and Uhri, 161 Mo. 176, 186; Estes v. Nell, 140 Mo. 639, 651; Snell v. Harrison, 131 Mo. 495, 503.]

In Rogers v. Johnson, 259 Mo. 173, 168 S. W. 613, this court said: "The principle is well established that a judgment in ejectment against one in adverse possession breaks the continuity of such pos-

session, and the adverse possession of the plaintiff in the ejectment proceeding dates from the judgment, when he is in law invested with the possession.

"The rule as originally announced in this State was that the mere recovery of a judgment in ejectment would not suspend the running of the Statute of Limitations in favor of him against whom it is rendered; that in order to have that effect possession must be taken under the judgment or something done to make the defendant's possession subordinate to the plaintiff's title. [Mabary v. Dollarhide, 98 Mo. 198.] However, this court In Banc in Snell v. Harrison, 131 Mo. 495, held that a valid, subsisting judgment in ejectment against one in possession and claiming adversely interrupted the peaceable possession of the defendant and suspended the running of the statute in his favor, thus overruling Mabary v. Dollarhide, supra, so far as it announced a different doctrine. The rule as thus announced has since received the unqualified approval of this court in the cases of Estes v. Nell, 140 Mo. .639, and Sanford v. Herron and Uhri, 161 Mo. 176."

See also Matthews v. Austin, supra.

If, therefore, a judgment in an ejectment case in plaintiff's favor as to title and right of possession in and of itself puts an end to the running of the Statute of Limitations, notwithstanding defendant's continuance of his possession, we see no reason why a judgment in a suit to determine and quiet title does not have the same effect, especially in view of the comprehensive finding of the court in the judgment heretofore mentioned and the injunctive feature of that judgment prohibiting defendant and his grantors from having or claiming title.

Suits in ejectment, when tried on that theory, are in substance and fact suits to try title, with the right of possession only an incident, and do not differ materially from suits to determine title when brought by one out of possession against one in possession. As said in Idalia Realty & Development Co. v. Norman, 168 S. W. 749, 753: "While a judgment in an ejectment suit is not a bar to another suit for the same premises, the action being only possessory, yet when the title is in issue, and the right of possession only an incident, it has all the consequences of an ordinary suit, when the parties are the same, the land is the same, and the evidence in support of the respective titles is the same. [McAnaw v. Clark, 167 Mo. 443 . . .; Potter v. Adams, 143 Mo. 665.]"

And it is held in Armor v. Frey, 253 Mo. 447, that in a suit to determine and quiet title it is incumbent on defendant to bring forward every claim of title which he has, inclusive of title by adverse possession. Perhaps defendant should have amended his answer at the trial of Matthews v. Austin in 1924.

In Oberein v. Wells, 163 Ill. 101, 45 N. E. 294, the court had in 1875 rendered a decree in equity to the effect that plaintiff's grantor was the owner in fee of certain land and that his title be established and confirmed, and that defendant's grantors deliver possession to plaintiff's grantor, and that such defendant "stand perpetually enjoined from setting up or asserting any right, title or interest in and to said premises." The defendant and his grantors continued in possession, notwithstanding said decree, claiming as owners, till a second suit was brought in 1892. Defendant and his grantors had really been in such possession since 1865, so that his title was unquestionably good by adverse possession under the Statute of Limitations of twenty years in force in that state, unless the decree of the court in 1875 had the effect of interrupting the running of such statute. On this point the court said: "Neither a party nor those claiming under him can be heard to say that a possession of land which is expressly held by a court of competent jurisdiction to be a wrongful possession will afterwards be held by a court of equity to be one recognized as sufficient to create a bar under the Statute of Limitations. The contention of appellants that the decree of 1875 was no interruption of the Statute of Limitations is without merit. It was an adjudication of the rights of parties, and decreed that the ten years' former possession by Oberein had been an unlawful possession. If he afterwards continued, it must be as a new possession, and dating from the rendition of this decree. When the present bill was filed, then, appellants will not be given a credit of time on the Statute of Limitations which extends back of that decree, and it was not error in the circuit court to so hold."

In Busby v. Maus (Ill.), 128 N. E. 564, this is said: "This court has also held that, where the title to a tract of land has been decreed by a competent court to belong to a complainant bringing the suit and that the possession of the defendant is unlawful, such defendant cannot rely upon his prior possession in a subsequent suit to establish his title, but can only rely upon the new possession held after the decree."

In Gower v. Quinlan, 40 Mich. 572, the court held that where a defendant was in adverse possession of land, a decree of court finding title in and requiring defendant to convey to another stopped the running of the statute as to such owner, though the defendant continues his actual possession. The court there said: "Whatever may have been the true character of Mrs. Smith's possession between 1852 and 1855, the decree made in the latter year which required her to convey to the administrator of her former husband, shifted her position and placed her in the same condition in regard to her possession as though she had then voluntarily made conveyance to the administrator. Her previous possession was of no avail any

longer as a holding to help make out a continuous adverse possession. Her entire right was determined by the decree, and her possession thereafter, even when joined to that of her successors in the same right, appears to have been too short to give rise to a title under the mortgage founded on adverse possession.''

In suits in the form of trespass to try title, which is a trial of title rather than right of possession, where the court renders judgment adverse to one in actual possession in favor of the other, such judgment, though not disturbing the actual possession of such party, has, by its decree of title in the other party not in possession, the effect of interrupting the adverse possession as of the date of such judgment, and the period of limitations must commence anew from that date. [Taylor v. Belcher Loan & Mortgage Co. (Tex.), 265 S. W. 403, 405; Bailey v. Laws (Tex.), 23 S. W. 20.]

It follows from what has been said that defendant cannot base a title on his adverse possession, and that on the record the plaintiff was entitled to a judgment. The case is, therefore, reversed and remanded with directions to enter judgment for plaintiff. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., in Division One, is adopted as the opinion of the Court en Banc, all of the judges concurring.