MELVIN L. GRAY, ADM'R OF AUGUSTUS H. EVANS, Plaintiff in Error, *v.* PETER TEMPLE, Defendant in Error.

*Conveyance—Description.*—The metes and bounds, and other descriptive calls in a deed, will control the call for quantity, unless from the tenor of the whole deed it appears to have been clearly the intent of the grantor to give only a definite quantity. A. conveyed land to B., describing it as "the upper half tract of land purchased by A. of C., by deed, &c.," which tract of land, now intended to be granted and sold, shall contain 315 arpents, to be bounded north by the Missouri river, west by land of Seely, south by land of James, and on the eastern or lower side by a line to be run parallel to the lower line of the tract of 630 arpents bought of C; and which lower line is hereafter to be run, and is to divide the land now granted from the land of A. The whole tract contained more than 630 arpents. *Held*—That the deed conveyed one half of the tract, to be bounded by the line to be run.

*Error to St. Louis Land Court.*

*Wm. T. Wood,* for plaintiff in error.

The authorities referred to by defendant in no way affect this question, for metes and bounds in this case are as much

for plaintiff as for defendant, and the principle, in the cases referred to, will help neither party.

In the absence of authority in point for this case, it is left to stand upon the particular words and terms of the deed. (Smith v. Smith, 4 Bibb, 81; Grant v. Combs, 6 Mon. 281; Gilmore v. Morgan, 2 J. J. Mar. 65.)

*Glover & Shepley*, for defendant in error.

The legal effect of the words in the description of the land conveyed by the deed of Pryor Quarles to Robert Quarles, is to carry to said Robert Quarles the upper or western half of the entire tract; for,

I. It is a well known principle of law that metes and bounds will control, unless the deed shows a clear intent to give only a definite quantity. (Nichols v. Turney, 15 Conn. 101; Jackson v. McConnell, 17 Wend. 175.) Here, not only does the deed purport to carry the upper half of the entire tract purchased of Easton, then supposed to contain 630 arpents, but as if to prevent any question as to what was intended, it fixes the lower boundary of the tract conveyed by stating that the east or lower line of said upper half shall be parallel to the east line of the larger tract of which it formed a part. By reference to the plat it will be seen that there are three ways in which the tract can be divided into two equal parts: one is to divide it so that the dividing line shall be parallel to the upper or tract line of the tract; the second is to place the dividing line arbitrarily without paying any attention to the east or west lines of the tract, and the other is to make the dividing line parallel to the lower or east line of said tract; and it was this last manner of division that the deed requires shall be made.

II. The words "which shall contain 315 arpents" do not in any manner show any intention to limit the land conveyed to the quantity of 315 arpents. The most that can be said is that these words are a warranty that the upper half shall not contain *less* than 315 arpents. Suppose the same description had been used in a bond to convey, instead

of the deed itself, and there was a suit for specific performance, is it not clear that the legal effect was to agree to convey the upper half, with a warrant that that upper half shall contain at least 315 arpents.

III. The use of the words "shall contain 315 arpents," when taken in connection with the after recital that the entire tract consisted of 630 arpents, shows an evident intention that the land shall be divided equally between grantor and grantee.

IV. If the dividing line is not definitely fixed by the deeds, then the parties are tenants in common, and no action lies for trespass. (4 Kent's Com. 369.)

BAY, Judge, delivered the opinion of the court.

Plaintiff filed a bill in the St. Louis Land Court to restrain defendant from cutting timber upon land therein described, which he alleged belonged to him. Defendant in his answer denies having cut any timber upon any land of the plaintiff, and alleges that the land upon which he did cut timber was his own land, and not the property of the plaintiff.

It appears from the record in the case, that on the 15th May, 1819, Rufus Easton and wife conveyed to one Pryor Quarles a certain tract of land, which in the deed of conveyance is described as follows:

"A certain tract or parcel of land situate on the south bank of the Missouri river, in the township of St. Ferdinand, county of St. Louis, Territory of Missouri, containing six hundred and thirty arpents, more or less, and bounded on the north by the Missouri river, on the east by land granted and confirmed to John N. Seely, on the south by land confirmed to James James, and on the west by land now owned and possessed by Jaques Seely, it being the same land, four hundred and eighty arpents of which was granted and confirmed to Daniel and Samuel Hodges, and by them deeded to said Easton by deed dated the second day of April, in the year 1810, and 150 arpents of which is a part of a tract of

400 arpents granted and confirmed to Gilbert Hodges, and by said Gilbert deeded to said Easton on the 21st of October, 1815."

On the 21st March, 1820, Pryor Quarles and wife conveyed to Robert Quarles a part of said tract, which is described in the deed as follows:

"All their right, title and interest, which the said Pryor and Joannes Quarles may have of, in and to the following tract, or parcel of land, to wit: the upper half tract of land purchased by the said Pryor Quarles of one Rufus Easton, by deed dated the 15th day of May, 1819, which tract of land now intended to be granted and sold shall contain three hundred and fifteen arpents, lying in the township of St. Ferdinand aforesaid, on the southern bank of the river Missouri, and to be bounded on the north by said river, on the upper or western side by the land of Jacob Seely, on the southern side by the land of James James, and on the eastern or lower side by a line to be run parallel to the lower line of the tract of 630 arpents bought of Rufus Easton as aforesaid, and which lower line is hereafter to be run as aforesaid, and is to divide the land now deeded from the land of the aforesaid Pryor Quarles," &c. Under this deed defendant obtains his title, and the plaintiff claims under conveyances from the heirs of Pryor Quarles, so that in fact both parties claim under Pryor Quarles.

It is conceded that, upon a survey of the entire tract, it was found to contain considerably over 630 arpents. It is further conceded by the parties, that if the grant in the deed from Pryor Quarles to Robert Quarles is for one half of the entire tract bought of Rufus Easton, irrespective of the number of arpents, then the land upon which the alleged trespass was committed was within defendant's line, and consequently the plaintiff cannot recover. The only question, therefore, arising upon the record in this case, is as to the construction that is to be given to said deed from Pryor to Robert Quarles. It is insisted by the respondent that the legal effect of the words in the description of the land is to

convey the upper or entire half of the entire tract, while the appellant holds that the grant is for the specific quantity of 315 arpents and no more.

The court below, at the instance of the defendant, declared the law as follows: " The court declares the law to be that the deed from Pryor Quarles and wife to Robert Quarles, dated the 21st day of March, 1820, operated to convey to said Robert Quarles all the title that Pryor Quarles and wife had, at the date of the deed, in the upper one half. of the tract of land purchased by said Pryor Quarles of Rufus Easton, by deed dated the 15th day of May, 1819, to be so taken that the east or lower line of said upper half shall be parallel to the east line of said larger tract, irrespective of the number of arpents that may be contained in said upper half."

The court dismissed complainant's bill, and overruled a motion for a rehearing, whereupon he appealed to this court.

It is a well settled rule of law that known and fixed monuments will control courses and distances, and metes and bounds will include the lands within them, though the quantity vary from that expressed in the deed, unless it can be gathered from the whole deed that it was clearly the intent of the grantor to give only a definite quantity—(15 Conn. 101; 2 Mass. 380; 6 Wheat. 580; 6 Serg. & Raw. 488; 6 Binn. 102; 17 Mass. 207)—and the question here to be considered is whether such an intent is apparent upon the face of the deed. We are of opinion that it is not. In the deed from Easton to Pryor Quarles, the land is described as a tract containing 630 arpents, and in the deed from Pryor Quarles to Robert Quarles the upper half is described and designated as a tract of 315 arpents, the eastern boundary of which is to be determined by a line to be run parallel to the lower line of the tract of 630 arpents. It is therefore evident that all parties supposed that the tract contained 630 arpents, and that the grant in the deed to Robert Quarles was for a moiety of the same, or, as it is described in the deed, " the upper half." The recital that it shall

contain 315 arpents can only be regarded as one of the means of describing the premises, or at most a covenant that the tract shall contain at least that quantity. The case of Jackson v. McConnell, 19 Wend. 175, is strongly in point. According to the report of the case, one John Suffern being the owner of a tract of land containing 400 acres, conveyed the same to John S. Suffern, excepting and reserving 200 acres off of the north side of the lot, agreed by articles of agreement of a prior date to be conveyed by the grantor to one McConnell. In pursuance of such agreement he made a deed to McConnell, describing the land as beginning at a well known point, giving courses and distances, and concluding as follows : " containing 200 acres, strict measure, and no more." It was insisted on the trial by the plaintiff that the defendant was in possession of more than 200 acres, and that his possession of the excess (about 9 acres) was wrongful, inasmuch as by his deed he was limited to 200 acres. On the part of the defendant, it was contended that the southern boundary of the northern 200 acres was designated by a line surveyed by one Lawrence, and known as the Lawrence line ; and the Supreme Court of New York held that the words of exact restriction to two hundred acres, and no more, could never be allowed to supersede, or control, a palpable description, so easily traceable as was the Lawrence survey through its monuments, courses and distances. Other cases might be referred to, wherein it is held that words apparently restricting the quantity must give way to fixed monuments, or metes and bounds ; but it is unnecessary to recite them, as the rule is well established by authority. The case at bar furnishes no exception to this rule, for, as before stated, the language of the deed does not show an intent on the part of the grantor to convey the specific quantity of 315 arpents and no more.

Judge Dryden concurring, the judgment of the court below will be affirmed.