WILLIAM A. CASHION and GEORGE C. CASHION, Insane, By FREDERICK W. CASHION, His Guardian and Curator, v. JESSE I. MEREDITH, JOHN W. MEREDITH, EDWARD MEREDITH and ANNA MEREDITH CONNER, Appellants.—64 S. W. (2d) 670.

Division One, October 19, 1933.

*Robb & Robb* for appellants.

*Samuel Bond, C. A. Killian* and *James T. Greenwell* for respondents.

HAYS, J.—This action, brought in 1927, is in ejectment and for partition, pleaded in separate counts. A trial by jury on the ejectment count resulted in a verdict for plaintiffs as directed by the trial court. From the judgment rendered thereon the defendants appealed.

A small parcel of land is involved, some fifteen acres, situate in Perry County and lying along the east boundary of Spanish Grant No. 1843 confirmed to Charles Ellis and along the west line of the southeast fractional quarter of section 20, in township 36 north, range 12 east. The parcel is bounded on the east by what was formerly an arm of the Mississippi River and is in the record termed the "cut-off," which flowed between the mainland,—said survey No. 1843, —and Jones Island, said fractional quarter section being on the west side of said island. The cut-off has long since closed and become largely filled up, so that it has been for many years a mere depression, with water standing in it until within somewhat recent years. It appears that one Anderson Cashion owned this fractional quarter section at the time of his death in March, 1878, having acquired it from the entryman. The parcel in controversy was formed by accretion, the respondents contending the accretion attached as it was formed to the west side of said fractional quarter section, and the appellants contending it was added to the mainland, that is, the land within said survey. The United States survey of August 19, 1818, shows said southeast fractional quarter to consist of 25.41 acres, with its west boundary line in the form of a bow along and adjacent to the cut-off and with its east line the middle north and south line of said section. From the location of the northeast and southeast corners of survey 1843 the eastern line thereof, if extended, would run near said middle section line of said section 20 and nearly parallel with it, and would cut said fractional quarter section, in the form and of the acreage aforesaid, approximately half in two. Therefore, although the testimony is to the effect that the present depression mentioned is in the same location as the cut-off was in the beginning, it does necessarily seem in the light of the government survey that the accretion was formed by reason of the cut-off's reces-

sion westward from its location as shown on said survey, since the accretion does not appear upon the government plat.

In the ejectment count the respondents claimed to own the disputed parcel in fee as tenants in common, and laid ouster as of October 13, 1926, while in the count looking to partition they claimed to be cotenants with appellants and to own 92/180 thereof. The appellants' answer, after admitting their possession, pleads the general issue and contains special pleas of title in themselves by adverse possession under the ten-year, the twenty-four-year and the thirty-year Statutes of Limitation.

The respondents filed no brief in this court and contented themselves with filing a motion to dismiss the appeal on the alleged ground that the brief of the appellants does not comply with our Rule No. 15, which requires an appellant's brief to contain a fair and concise statement of the facts of the case without reiteration, statement of law or argument. Although appellants' statement is not as helpful as it might have been made, we do not regard it as violative of our Rule 15. Disallowing this point, we proceed to an examination of the case on the merits.

Anderson Cashion, noted above, left as his sole heirs at law four children, Francis M., William J. and Nancy Cashion and Elizabeth A. Clifton. The respondents are children of said Nancy Cashion (who married a Cashion) and grandchildren of said Anderson Cashion, deceased. They claim title by inheritance from said deceased and through their mother, and also through an unrecorded quitclaim deed, dated in 1922, from certain great-grandchildren, executed to respondent William A. Cashion. The appellants, on the other hand, claim that the title of the parcel in question passed, together with a certain tract lying within Spanish Grant No. 1843, from Francis L. Jones and wife to Francis Douglass Jones by deed dated November 1, 1873, recorded in 1880, and by deed from Francis Douglass Jones and wife to Isaac Meredith of date July 16, 1880, recorded on the last date, and was also included in a quitclaim deed executed by the heirs of Francis L. Jones to Issac Meredith dated March 18, 1881, and recorded April 23, 1881. The appellants are the sole heirs at law of said Isaac Meredith, who died on March 25, 1925.

In the trial the respondents introduced the deeds in their said chain of title, including the original entry made by one Thorpe, as shown by the book of original entries, and all of the conveyances mentioned. All these, except the deed to William A. Cashion, purported to convey said southeast fractional quarter section. They introduced an official copy of the survey made by the government in 1818 and a copy of another such survey made in 1836; also the county surveyor's plat of the land in suit, made for respondents, portraying and identifying the parcel in suit as the latter is particularly described in respondents' petition and in said deed to William A.

Cashion. There was evidence tending to show that the accretion attached to the island, and some slight evidence that it attached to the land lying west of the depression.

It appears from the evidence that Isaac Meredith went into possession of said tract of land lying west of and adjacent to the depression, it being a part of said Spanish Grant, as early as 1873 and began and thereafter continued to claim title to the accreted land, which was then in timber, and to cut timber therefrom for use on the land first mentioned. In behalf of appellants there was evidence tending to show that from that time on down to the time of his death said Meredith claimed ownership of the disputed accretion, openly, notoriously and continuously and, from time to time throughout said period, had cut timber off it for firewood, rails, posts, logs, poles for use in building corn cribs, and logs for use in building a barn, and also "excelsior" timber for sale. He completely cleared parts of the parcel and cultivated such parts by tenants. The parcel was sometimes referred to as "Meredith's Grove" and was so advertised in announcing picnics to be held there. There was evidence that a fence was maintained between the accretion and the land on the east thereof, by the owner of the latter, from an early date and the fence appeared to be old in 1894. This fence, which was of rails, was washed away in the flood of 1903, after which it was replaced with a wire fence that was still standing in 1922.

In 1922, about the time said deed to William A. Cashion was executed, Meredith procured an abstract of title of the accretion and of the land adjacent thereto on the west and had a survey and plat made of the same by the county surveyor. The evidence shows that after Isaac Meredith's death the appellants continued to assert claim and to exercise acts of dominion just as said deceased had done. This recital of the facts, if not altogether clear, will sufficiently serve for a consideration of the questions of law to be determined.

The errors assigned relate to the giving of certain instructions and the refusal of certain others; to the refusal to admit in evidence certain deeds and plats offered by the appellants; and to the sufficiency of the verdict.

With respect to the verdict, appellants contend it was too vague, uncertain, indefinite and insufficient in that it failed to describe the land in suit and the interests of respondents therein. This point is saved by motion in arrest of judgment. The jury by their verdict merely found "the issues in this cause in favor of the plaintiffs, and that the plaintiffs are entitled to the possession of their respective interests in the land described in the petition and that defendants are unlawfully withholding possession thereof from them." In support of this point the appellants cite Benne v. Miller, 149 Mo. 228, 50 S. W. 824, and Brummell v. Harris, 148 Mo. 430, 50 S. W. 93, which hold, that a verdict in ejectment should so describe the land

which it is intended that plaintiff shall recover that the description, when copied in the sheriff's writ of ouster, will show him the land he is to take from defendant and restore to plaintiff. But in the view we take of the case at bar it seems unnecessary to notice this assignment further than to direct attention to the majority opinions of our court en banc in the subsequent cases of Howell v. Sherwood, 242 Mo. 513, l. c. 546-547, and Jones v. Eton, 307 Mo. 172, 270 S. W. 105.

The appellants offered instructions, in conventional form, under the ten-year and the twenty-four-year Statutes of Limitation, hypothesizing a verdict for defendants upon a finding that defendants and those under whom they claim had been in the open, exclusive, continuous, hostile, notorious and adverse possession of the land in dispute for the specified number of years before the commencement of the suit, claiming to be the sole owners thereof. These instructions were refused—erroneously, we think. Upon the evidence in this record we think the following observations, made upon similar facts evidencing adverse possession, by our court en banc in the case of Goltermann v. Schiermeyer, 111 Mo. 404, at pages 421-422, find full application here:

"In Draper v. Shoot, 24 Mo. 201, it was said: 'It is no easy matter to say what is an adverse possession. It is a question compounded of law and fact, and every case in which it is involved must be determined by its own circumstances. What is adverse possession is one thing in a populous county, another in a sparsely settled one, and still a different thing in a town or village; . . . to constitute an adverse possession there need not be a fence, building or other improvement made; and . . . it suffices for this purpose that visible and notorious acts of ownership are exercised over the premises in controversy for the time limited by the statute; . . . much depends upon the nature and situation of the property, the uses to which it can be applied, or to which the claimant may choose to apply it.' These observations were approved in Leeper v. Baker, 68 Mo. 400, where it was again said: 'The words "actual occupancy" are themselves indefinite in their meaning, for although they are usually applied to a case of residence on the land, or to an occupation by fences or buildings, they are not necessarily restricted to such marks of occupation, but may be applied to other acts of ownership which are known to the true owner.' [See also Mississippi Co. v. Vowels, 101 Mo. 225.]

"Now in this case the plaintiff's father built a fence along this part of the land as far back as 1852, leaving a private roadway between the fence and the Krekel line. For a period of about thirty years plaintiff and his father made no claim to any of the land south of that line. During all that time the defendant claimed the land up to the line as his own, of which claim the plaintiff and his father had full notice and knowledge. Defendant has had this part of the

land inclosed for five or six years. It is timber land; some of it, we infer, not adapted to cultivation. During the thirty years the defendant has used it in connection with his farm, cutting timber therefrom for wood, rails and house logs. We think these facts show an exclusive adverse possession for the full period of ten years, and that these facts constitute actual, exclusive possession. There is, therefore, evidence upon which to submit the case to the jury as to this part as well as the other.''

And the ruling just made upon the instructions refused betokens that a like error occurred in the court's direction of a verdict for respondents. [Nichols v. Tallman (Mo.), 189 S. W. 1184.]

■ The contentions remaining relate to the exclusion of deeds and plats offered by appellants. The first of the deeds was a warranty deed from Francis L. Jones and wife to Francis Douglass Jones, dated November 1, 1873, and the second, a warranty deed from Francis D. Jones to Isaac Meredith, dated July 16, 1880. Each of these purports to convey 220 acres or more, a part of Spanish Grant No. 1843 confirmed to Charles Ellis, and ten acres on the east of said 220 acres or more; and another warranty deed from Francis D. Jones and the other heirs (names of others recited) of Francis L. Jones to Isaac Meredith dated March 18, 1881, duly recorded. These conveyances were excluded on objections interposed by respondents on the grounds stated, in substance, that from the descriptions the land cannot be located, that the description by metes and bounds does not close; and that two tracts are described, one on the west bank of the cut-off and in survey No. 1843, and the other at the corner of the first tract described, the description of the latter—the parcel in dispute—being so indefinite it cannot be ascertained.

The descriptions in the first two Jones deeds offered refer to corners and fences of other proprietors. Such descriptions necessarily require evidence *aliunde* to eke them out. It may be that such evidence was available, but appellants did not offer to show, as it is permissible to show, that the boundary lines fixed therein cover the land thought to be covered therein and can be ascertained on the ground so as to identify the grant. Nor did respondent offer to make such showing with respect to the deeds to Meredith, as they perhaps might have done by witness Delassus, who had surveyed and platted the land for Meredith. ■ This plat was offered without preliminary proof that the boundary lines fixed in the Meredith last deed can be and were ascertained on the ground, and, as ascertained, were correctly portrayed on the plat. In such circumstances the court's action in excluding these deeds and the plat should not be deemed erroneous. ■ But in examining Meredith's last deed in connection with the plat, the description does not seem open to the objections made to it. The recitals of quantity, following the particular description, are merely descriptive and do not determine the quantity sold. [Campbell v. Clark, 6 Mo. 219; Gray, Admr. of

Evans, v. Temple, 35 Mo. 494.] And the description seems to close, and also seems to enclose the land claimed to have been conveyed by the deed. But be that as it may, that matter should be more fully developed on the next trial. The fact of the survey and the plat thereof, after the establishment of preliminary matters concerning them, may be found competent not only as evidence of title or color of title, but also as evidence of dominion over the property. [5] An entry and survey made by one claiming land is the exercise of an act of ownership. [Harvey v. Tyler (U. S.), 2 Wall. 238, 17 L. Ed. 871.]

■ It is to be noted that if the last deed to Meredith contains a description of the disputed land the deed constitutes color of title which renders such possession as he may have taken of portions of the tract not unlawful and extended his possession to the whole. [Truitt v. Bender, 193 S. W. 838.] And if the whole of the land embraced in the deed is a contiguous body of land, the possession of a part of the entire tract, with a claim of the whole and with the usual acts of ownership over the entire tract, established possession of the whole, a possession such as would ripen into title under the Statutes of Limitation. [Scofield v. Harrison Land, etc., Co., 187 S. W. 61, 64.]

■ Appellants offered in evidence certain deeds by which certain heirs of Anderson Cashion conveyed to Carrie Knox and others land in the east fractional half of said section 20, other than the land in suit, on the theory of nonclaim by the grantors and their successors in title to the land in suit. If any of those deeds describe or include the original tract of 25.41 acres which constituted the said quarter section we think they would be admissible in evidence under the general issue as tending to show outstanding title in a third person and as tending to defeat respondents' title. [Callaway v. Fash, 50 Mo. 420; West v. Bretelle, 115 Mo. 653, 22 S. W. 705; 9 R. C. L. 870.] For if the accretion formed to said original tract it became the property of the owner of the latter tract. [Campbell v. Laclede Gas Co., 84 Mo. 352, 372.] We think that otherwise the deeds would not be admissible upon the issues and facts in this record. We do not perceive any application here of the case of Hayes v. McLaughlin, 217 S. W. 262, cited by the respondents.

Our attention is directed to the irregularity in rendering judgment on the ejectment count without disposing of the count for partition. Although judgment should have been withheld so as to include and dispose of both counts, it was actually entered in final form upon the ejectment count alone, and appeal was taken therefrom. No point being made by appellants or respondents on this condition of the record, the judgment will here be treated as a final judgment. [Mann v. Doerr, 221 Mo. 1, 121 S. W. 86.]

From the views herein expressed, it follows that the judgment is reversed and the cause remanded. All concur.