WALTER LANDERS and DAISY LANDERS, Appellants, v. LUTHER C. THOMPSON and MAGGIE THOMPSON, ESTELLA ALLGIER, A. E. ALLGIER, JR., and CHARLES NICHOLAS ALLGIER, a Minor.—No. 40209.—205 S. W. (2d) 544.

Division One, November 10, 1947.

*John T. McKay* for appellants.

1170

*Finch & Finch,* by *Freeland L. Jackson* for respondents Estelle Allgier, A. E. Allgier, Jr., and Charles Nicholas Allgier.

HYDE, J.—This is an action to determine title to real estate, with a second count in ejectment. Two cases, involving the same issues, were consolidated by agreement and tried by the court without a jury and judgment entered for defendants. Plaintiffs have appealed.

It was agreed that plaintiffs owned the East half of the Northeast quarter of Section 17, Township 22, Range 12, New Madrid County; that defendant Thompson owned the Northwest quarter of the Northeast quarter of the section; and that defendants Allgier owned the Southwest quarter of the Northeast quarter thereof, at least so far as the record title showed. The principal contested fact issues were whether a fence, running north and south through this quarter section, was on the true line between these tracts; and, if not, whether defendants had acquired title by adverse possession to the parts of plaintiffs' described land west of the fence and adjacent to their land. Plaintiffs claimed that the fence was 73 links east of the northwest corner of their eighty acre tract and that defendant Thompson was in possession of 1.74 acres of their land adjoining his forty. They also claimed that the fence was one chain and 31 links east of their southwest corner and that the Allgiers were in possession of 2.26 acres of their land adjoining their forty.

 Although this case was tried after the effective date of the new code (Laws 1943, p. 357; Sec. 847.3 Mo. Stat. Ann), both parties offered declarations of law and plaintiffs allege error on the court's action thereon. This procedure was abolished by the new code both by repeal of Sections 1103 and 1118 (references are to R. S. 1939 and Mo. Stat. Ann. when not otherwise specified) and by adoption of Section 114. (Section 847.114 Mo. Stat. Ann.) Declarations of law (in the form of instructions) are no longer necessary in nonjury trials and they cannot be made the basis of allegations of error on appeal. [See Carr, Missouri Civil Procedure, Section 813.] Instead, Section 114 provides for review de novo on the whole record before the trial court "as in suits of an equitable nature." Therefore, the only contention to be considered is that the judgment was for the wrong party and should have been for plaintiffs.

Plaintiffs offered the survey on which they relied, and the testimony of their surveyor concerning it, together with their deed dated January 4, 1937, the deed to Allgier dated February 18, 1935 and the deed to Thompson dated January 10, 1933. They showed that they gave notice of their claim to defendants in October 1941 and that this suit was commenced on June 20, 1942.

Defendants' evidence showed that the land was owned by Matthews and Stubblefield prior to 1919; that prior to that time it had all been in woods; that they cleared some of it and built a woven wire fence, north and south, through the center of Section 17; and that this fence ran straight through that section, through the section north of it and through the section south of it. The agent who sold the land said that he sold the east eighty (now owned by plaintiffs) to a Chicago man, called Schoolfield (he called it a fractional eighty) between 1923 and 1926. He sold the west eighty (now owned by defendants) to a man by the name of Standt from Indiana; his deed

1172

was dated December 11, 1925 and it was shown that he still owned it in 1930. He said he took both men to the fence lines and pointed out the north and south fence as the boundary line between the two eighties. He said that the fence was in the same position now as it was then and was in line with the fence in the section just north. The fence had been repaired with barbed wire.

Apparently the land was owned by non-residents for many years and was farmed by tenants. The agent of Matthews and Stubblefield continued to rent it for Standt. Defendants' evidence consisted mainly of the testimony of these tenants. It was shown that there was a house and barn on the Thompson forty in 1919 but that only ten acres was then cleared. However, there were no improvements on the Allgier forty then and only about an acre and a half was cleared. The Thompson forty was cleared and cultivated over to the fence before 1930 and all but five or six acres was in cultivation by 1931; but the south forty was still in woods then with only a small strip on the north end in cultivation. A house was built on the Allgier forty about 1935 and it and some other buildings are on the land plaintiffs claim. One tenant on the south forty took down a short strip of the fence before 1937 and pastured some of the land now owned by plaintiffs. When plaintiffs got it, Mr. Landers fenced back on the same line. In rebuttal, he said this was before he had the survey made.

Even if the fence was not on the true line and that fact was unknown to the owners of the west eighty, nevertheless a hostile claim could be made by one who believed himself to be the owner of the ▮▮▮▮ land which he was claiming. [Walbrunn v. Ballen, 68 Mo. 164; Cole v. Parker, 70 Mo. 372; Goltermann v. Schiermeyer, 111 Mo. 404, 19 S. W. 484; Courtner v. Putnam, 325 Mo. 924, 30 S. W. (2d) 126; Brown v. Wilson, 348 Mo. 658, 155 S. W. (2d) 176.] "The principle, as stated in all of our prior decisions, may be reduced to this: If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs." [State ex rel. Edie v. Shain, 348 Mo. 119, 152 S. W. (2d) 174.] Thus it is not necessary that the true boundary line be known before an unequivocal claim can be made to ownership of land beyond that line.

In this case the evidence tends to show that both of the original purchasers at all times considered the fence built by their common grantor as the line between their respective tracts. It was built for the express purpose of dividing the quarter section into these two tracts and it was in line with the fences north and south of it extending into other sections. The tenants of the original purchaser

of the west eighty cleared the timber to this line and cultivated to this line. A subsequent .owner of the south forty. had a house and other buildings built near the fence east of the line claimed by plaintiffs. These acts indicate a claim of ownership to the fence. No owner of the east eighty prior to plaintiffs ever made any claim beyond this fence and cultivated only to it; and plaintiffs made no such claim until after they had owned it for more than four years. There was nothing in defendants' evidence to indicate that they and their grantors did not at all times claim to the fence and plaintiffs produced no evidence to inpugn the unconditional nature of their claim.

The established rule is: "Defendants, claiming the land by adverse possession, had the burden of proof of all the essential elements of adverse possession, which required them to show that they and their grantor held actual, notorious, and continuous possession under an unequivocal claim of ownership for the statutory period (Himmelberger-Harrison Lumber Co. v. Craig, 248 Mo. 319, 154 S. W. 73, and cases cited; Fiorella v. Jones (Mo. Sup.), 259 S. W. 782; although, if defendants produced evidence sufficient to make a prima facie showing on this issue, the burden of going forward on the issue of the intent and character of defendants' claim would shift to plaintiffs (Fiorella v. Jones (Mo. Sup.), 259 S. W. 782; Bryan v. Millar, 299 Mo. 180, 252 S. W. 366; Chostner v. Schrock (Mo Sup.), 252 S. W. 381.)'' [Bell v. Barrett (Mo. Sup.), 76 S. W. (2d) 395; Tillman v. Hutcherson, 348 Mo. 473, 154 S. W. (2d) 104; Anson v. Tietze, 354 Mo. 552, 190 S. W. (2d) 193; see also Diers v. Peterson, 290 Mo. 249, 234 S. W. 792; Martin v. Hays (Mo. Sup.), 228 S. W. 741.] Actuality of possession and the intent with which dominion over land is exercised may be shown by circumstantial evidence. [Tillman v. Hutcherson, supra; Ernsting v. Gleason, 137 Mo. 594, 39 S. W. 70.] ''What is adverse possession is one thing in a populous county, another in a sparsely settled one, . . . Much depends upon the nature (and situation) of the property, and the uses to which it can be applied.'' [Cashion v. Meredith, 333 Mo. 970, 64 S. W. (2d) 670.] The possession and control of the land herein involved began with the development and reclamation of this area. The first adjoining owners were non-residents who leased the land to tenants. However, the tenants on the west eighty were put into possession up to the fence and continuously used all of the land involved. We think it may be reasonably inferred from all the facts and circumstances herein that Standt and his successors in title did make an unequivocal claim of absolute ownership to the fence; and our conclusion is that defendants made a prima facie case of adverse possession under a claim of right. There was no evidence to the contrary and the trial court found the issues for defendants. We adopt these findings as reasonable under the evidence.

1174

 There is also another reason why plaintiffs were not entitled to recover. Their survey was not definitely shown to have commenced from a corner established by the United States Government or from a corner re-established in accordance with Sections 13220-13221. Plaintiffs' surveyor did not know whether the government notes called for a full 640 acres in Section 17 and these were not offered in evidence. There was testimony indicating it was a small section. He measured from the center line of the Como drainage ditch which he assumed to be the east line of Section 17 because "the Little River Drainage District notes showed it to be located on the line," and because "old records by previous surveyors called for the dredge ditch to be the east line." None of these were offered in evidence and defendants had evidence that a previous survey showed the ditch was not on the section line by two and one-half rods. There was also testimoney that there was a curve in the ditch that "anyone can see" starting "just a little above the section line of 33." Plaintiffs' surveyor measured the north line of Section 17 as 80 feet short of a mile. His location of the line in question was made by dividing the distance into four equal parts. He also found shortages on west and south lines but said the east line was four links over a mile.

The surveyor also said that he did not find any government corners; and said "I wouldn't say I used any one particular point as a starting point but measured between the center of the road at the northwest corner of the section and the center of the ditch on the northeast corner." He did say that the State Highway Department "found an iron pin at the center of the intersection of 62 Highway and the road we call Lover's Lane running north and south." (On the east side of Section 17.) However, the State Highway survey was not put in evidence either. " 'Evidence of a survey which is not definitely shown to have commenced from a corner established by the government or, if lost, re-established in accordance with statutes, is of no probative force.' Cordell v. Sanders, 331 Mo. 84, loc. cit. 93, 52 S. W. (2d) 834, loc. cit. 839; Clark v. McAtee et al., 227 Mo. 152, loc. cit. 185, 127 S. W. 37; Wright Lumber Co. v. Ripley County, 270 Mo. 121, loc. cit. 136, 192 S. W. 996." [Klinhart et al. v. Mueller et al. (Mo. Sup.), 166 S. W. (2d) 519; see also Bowzer v. State Highway Comm. (Mo. Sup.), 170 S. W. (2d) 399.] Plaintiffs' evidence as to the location of their boundary line was too indefinite.

The judgment is affirmed. All concur.