252 S.W.2d 351 (1952)
SANDERSON et al.
v.
McMANUS et al.
No. 42655.
Supreme Court of Missouri, Division No. 2.
September 8, 1952.
Rehearing Denied November 10, 1952.
Horace Warren Kimbrell, Kansas City, for appellants.
John L. Gaylord, Kansas City, for respondents.
BOHLING, Commissioner.
Clarence J. Sanderson, Sr., and Katherine R. Sanderson, husband and wife, instituted this suit on December 19, 1947. against James J. McManus and Anne B. McManus, husband and wife, asking that the title of certain residential property *352 be adjudged in plaintiffs; that defendants be required to remove certain encroachments thereon within a time to be stated by the court, and for damages, alleged to be $3,000. Defendants filed an answer and cross-petition, in two counts, wherein, briefly stated, they sought to be adjudged the owners of the south 4 feet and 5 inches of the premises described in plaintiffs' petition, claiming title by adverse possession, et cetera, and damages by reason of plaintiffs' entry and commission of waste upon said strip of land. The findings, decree and judgment of the court were in favor of defendants, adjudged the title to the disputed strip in defendants, enjoined plaintiffs from claiming any title or right of possession therein, or easement, license, use or control thereover, and awarded defendants $1,142 damages. Plaintiffs appeal and contend the evidence was insufficient to sustain defendants' claim. The controversy has its origin in an erroneous survey.
Plaintiffs live at 5131 and defendants live immediately south of plaintiffs at 5133 Virginia avenue, Kansas City, Missouri. Plaintiffs purchased 5131 Virginia, a 50 foot lot, on October 26, 1944, the legal description reading: The south 35 feet of Lot 131 and the north 15 feet of Lot 130, Rockhurst Park Addition, Kansas City, Missouri. The south 4 feet and 5 inches of the above north 15 feet are here involved.
Defendants purchased 5133 Virginia, a 40 foot lot, on June 18, 1941, the legal description reading: The south 30 feet of Lot 130 and the north 10 feet of Lot 129, Addition aforesaid.
Plaintiffs, after they occupied 5131 Virginia in July, 1940, used the driveway north of their house to reach the rear of their property. Sometime in 1942 Charles Less moved into the property north of plaintiffs, 5127 Virginia, and in 1944 or 1945 Mr. Less purchased 5127 Virginia. He testified this driveway was not a joint driveway but plaintiffs used it with his permission. In the Spring of 1947 a controversy developed between Mr. Sanderson and Mr. Less over this driveway and each barricaded the driveway against the other. On June 18, 1947, Mr. and Mrs. Sanderson sued Mr. and Mrs. Less to establish their right to the use of the driveway and to enjoin Mr. and Mrs. Less from interfering therewith. Mr. Sanderson testified he was advised he could not win the suit and it was dismissed on September 24, 1947.
On October 21, 1947, Mr. Sanderson contracted with William Karnopp to construct a driveway and in the rear a retaining wall on his property between 5131 and 5133 Virginia avenue. According to Mr. Sanderson, a few days thereafter his attorney, Horace W. Kimbrell, received a letter from defendants' attorney, John L. Gaylord, advising that defendants understood the proposed driveway would encroach approximately 4 feet upon defendants' property; that the boundary line between the two properties had been established for more than 10 years and any removal of or damage to the fence or property south thereof would constitute a trespass on the property of the defendants. In October, 1947, Mr. Karnopp constructed the retaining wall on the property line and the driveway approximately a foot north of the property line between plaintiffs' and defendants' property as shown by corrected surveys. In so doing some damage was occasioned defendants' home.
Prior to his death in 1934, Dr. George F. Berry owned 5127, 5131, 5133 and 5135 Virginia avenue. These residences are located, respectively, on Lots Nos. (from the north to the south) 132, 131, 130, 129, Rockhurst Park Addition, Kansas City, Missouri. As stated above, the descriptions in the deeds overlap the lot lines. All four lots front on the east line of Virginia avenue and extend east 135.54 feet and are, we understand, 45 feet wide, except Lot No. 129, which is 50 feet wide.
The following is plaintiffs' chain of title so far as involved, with the date of acquisition shown after owner's name: George F. Berry, November 8, 1924; Carroll W. Berry and Mildred M. Berry, September 15, 1933; Helen F. Mulcahy, July 2, 1940, from whom plaintiffs acquired title on October 26, 1944.
The following is defendants' chain of title so far as involved, with the date of acquisition shown after owner's name: George F. Berry, October 10, 1927; George *353 C. Douglas and Lillian Douglas, June 2, 1932; George F. Berry, September 8, 1933; Carroll W. Berry and Mildred M. Berry, September 15, 1933; Edward M. and Lenora W. Berry, February 26, 1934; Elizabeth Wychoff, January 7, 1941, from whom defendants acquired title on June 18, 1941.
The common owners of the two properties were: George F. Berry, October 10, 1927, to June 2, 1932; and September 8, 1933, to September 15, 1933; Carroll W. Berry and Mildred M. Berry, September 15, 1933, to February 26, 1934.
Plaintiffs' house, 5131 Virginia, was built in 1924.
Edward M. Berry built for George F. Berry, his father, the houses at 5133 (defendants') and at 5135 Virginia in 1931. A survey of the properties was made in November, 1931, and he constructed the two houses in conformity to the lines established by this survey and the building restrictions requiring construction 4 or 5 feet from the property lines. F. M. Hands, of the Hands Surveying Company, testified that in 1931 the property south of 5131 Virginia was vacant and the lines for 5133 and 5135 Virginia were determined from the building on 5131 Virginia. Later surveys, dated March 6, 1946, and May 19, 1947, revealed an error of approximately 5 feet on the north in this survey of 1931.
It is not questioned that, according to the correct survey, the bay window on the north of defendants' home is on plaintiffs' property a foot or more for a distance, east and west, of 18 feet or more; that the lower decorative stones of the front wall of defendants' home extended across the property line a foot or more; and that the eaves also overhang plaintiffs' property line over 2 feet.
Defendants contend that a fence and trellises at the rear, and between the properties, a terrace, and two or more poplar trees at the front of the property marked a line 4-feet, 5-inches north of the true line as the boundary between the two properties, and that defendants acquired title thereto by adverse possession.
Edward M. Berry lived at 5135 Virginia after he built the houses until 1933, and at 5133 Virginia in 1936 and 1937, and owned 5133 from 1934 to 1941. He testified that there was a terrace 1½ to 2 feet high between the two houses, a wire fence in the back yard, and three or four poplar trees between 5131 and 5133 Virginia at the time he built the houses and these markers continued to exist while he lived in the property. He assumed the people who lived at 5131 Virginia had built the two or three strand wire fence, the terrace, and planted the poplar trees as they were there when he built the house in 1931, and that a Mr. Hardman had been a tenant at 5131 Virginia for eight or ten years. He claimed to the fence, the terrace, and the trees as the boundary line of the property at 5133 Virginia.
Foy D. Wade, the next occupant of 5133 Virginia, was a tenant of Mr. Berry until 1939. He testified that he had a water faucet underneath the bay window of the house and the fence began at the rear of the property and extended straight west up to and past the bay window, 2 or 3 feet beyond the water faucet; that the fence was far enough away from the house and bay window, about a yard, for him to walk between the fence and the window and attach the hose to water his yard; that the terrace and poplar trees were also there and prolonged the line of the fence; that two of the poplar trees died and he dug them out. He had trelliswork in the back yard.
Alexander Hamilton next occupied 5133 Virginia between July, 1939, and July, 1941, as a tenant. He stated his neighbors were, on the south, a Mr. Hancock, and, on the north, first a Mr. Wood, who operated a garage, and later the plaintiffs. He testified there was a big post in the fence along the back property line and from this post a fence extended westwardly between the two properties; that the line of the fence was about midway between the two houses, about 8 to 10 feet south of the line of the house at 5131 Virginia, and when it reached the house it made a right angle turn and was connected with the corner of the house at 5131 Virginia; that the fence had five 2-inch hollow pipe posts, from 5 feet to 3½ feet high (following the grade of the ground), with two strands of wire strung *354 on the posts, and trelliswork was also at the fence line on his side of the fence. He testified that after plaintiffs moved in, Mr. Zimmer, their son-in-law, did quite a bit of work repairing the fence; that 5131 was higher than 5133 Virginia; that there was a terrace between the two properties, the slope of which became steeper as one approached the rear property line and that there were two poplar trees in the front yard, constituting a prolongation of the fence line.
When Mr. and Mrs. McManus purchased 5133 Virginia in 1941 they were furnished a survey of the property dated June 18, 1941, which was made from points established in the 1931 survey, the erroneous survey. Mr. McManus testified that there was an east-west fence, consisting of iron posts, about 30 inches high, with two strands of wire, in the back yard between the properties terminating at the fence on the rear property line, and a trellis was tied to the fence; that a terrace was between the two houses and extended eastwardly toward the back of the lot; that the fence was straight and on the lower part of the terrace, and that there were poplar trees in the front yard when he moved in. He stated there was a mark on the sidewalk, which was in line with the fence in the rear. This fence was never down to his knowledge. He considered the survey furnished him to be correct and the boundary line very apparent. They considered the fence line and the boundary line one and the same, and claimed to the fence line because they thought it was the boundary line. He had no information to the contrary until sometime in 1946. When the Sandersons constructed the driveway and retaining wall in October, 1947, the fence was destroyed and the trellis was thrown into his yard. He did not know what became of the posts and wires. The construction of the driveway also resulted in destroying the mark on the sidewalk.
The above evidence on behalf of defendants (some additional facts may be stated hereinafter) was corroborated by other witnesses, to wit: K. L. Hancock, who owned and occupied 5135 Virginia avenue from 1936 continuously to the time of trial. W. D. Connor, who lived at 5127 Virginia avenue from July, 1937, to September, 1939. Clifton Craig, a real estate agent who showed 5133 Virginia for sale in 1938. Wilbur M. Rosene, a surveyor who made a survey of 5131 Virginia for plaintiffs in 1946 and stated the fence was straight. Calvin F. Troupe, the real estate agent who sold 5131 Virginia to Miss Mulcahy. Defendants also introduced a number of corroborating snapshot photographs showing the condition between the two properties on different dates.
Miss Helen F. Mulcahy, who conveyed to plaintiffs in 1944, was an adopted daughter of plaintiffs. She, plaintiffs, and Mr. and Mrs. Zimmer (plaintiffs' daughter and her husband) moved to 5131 Virginia in July, 1940. Miss Mulcahy was purchasing a 50 foot lot. Mr. Sanderson testified at the trial that he did not furnish any of the money when Miss Mulcahy purchased, but in answer to an interrogatory stated that he furnished her all of the purchase money. Miss Mulcahy and Mrs. Sanderson negotiated the purchase from Carroll W. Berry, who was represented by Calvin F. Troupe, a real estate agent. Mr. Troupe, in a deposition, testified that Mr. Sanderson twice accompanied the women to inspect the property; that there was a wire fence in the rear, which he understood was on the property line; that he called Mr. Sanderson's attention to the fence; that Mr. Sanderson stepped off 50 feet to the north, measured it twice, and was interested in the driveway north of 5131 Virginia. Miss Mulcahy's testimony indicates they considered the 50 feet extended south from the center of said driveway.
Miss Mulcahy, Mr. Sanderson and Mrs. Sanderson testified to the effect that the post and wire arrangement was not the boundary line between the two properties; that the true boundary was south of the fence and they so considered it, and that they paid the taxes.
Mr. Sanderson testified that when he first saw the property there were a couple of wires down on the ground; that Mr. Zimmer took care of the yard; that the posts and wire never extended between the houses or into the front yard; that it was *355 not up continuously; that animals and dogs could run through it; and that he first learned the house at 5133 Virginia was over the property line about six months after "we bought the property."
Mrs. Sanderson testified that when they moved in the weeds were 6 feet high and it was some time before she noticed three or four gas pipe posts and two strands of wire; that they were not permanent and you could lift them out when you cut the grass; that after every windstorm it would be down, was down as much as it was up, and it could be moved with one hand.
Miss Mulcahy testified that sometime after they moved in they noticed three small gas pipes to which was attached a wire, in some places two wires, which held up two trellises and some rose bushes; that a strong wind would blow it over, it was up and down, one could step over it, and could mow the grass through there.
Kathleen Zimmer noticed the wires or fence, which was "crooked," would step over it at times, and a dog sometimes knocked it down and she would put it back. It was down more than it was up.
Leonard Zimmer, the daughter's husband, also lived with plaintiffs on the property until 1946, except for the three years he was in the Armed Services. He testified he built the gas pipe-wire arrangement in August or September, 1940, because trash and cans were being dumped in the rear, and he built it without having the property line in mind; that it was originally 20 feet long, not fastened with concrete and could be moved in either direction, and was later lengthened to 30-35 feet and lacked about 6 feet of going between the two houses; and that he put the pole in the rear fence for a clothesline. His testimony indicates he built or rebuilt the fence along plaintiffs' back property line, and it ended with the post where the "southern property was."
Mr. Sanderson, Mrs. Sanderson, Miss Mulcahy, Mr. Zimmer and Mrs. Zimmer each testified that at no time after they inspected 5131 Virginia were there any tree or trees or line of trees in the front yard or between the properties, and that there was nothing indicating a property line between the two houses. Mr. Zimmer testified he spaded the front yard at the place in question and that there were no stumps of any trees there.
William Karnopp testified that he found no shrubs, poplar trees or gas pipe with wires marking a line between the two properties when he constructed the driveway and retaining wall in October, 1947; but that there was a terrace between the two properties.
Plaintiffs had a survey of their property made on March 6, 1946, by the Hands Surveying Company and it disclosed that defendants' house extended over onto plaintiffs' 50 foot lot and an error of 5 feet in the survey of 1931. They had a second survey made by Tuttle-Ayres-Woodward Company on May 19, 1947, and it disclosed the same facts.
Mrs. Sanderson showed the 1946 survey to Mrs. McManus, who made no claim to the property in dispute but wanted the Sandersons "to wait" until her husband returned from the Service. Mr. McManus returned in July, 1946, and the first information he had that his home was not on his property was when Mrs. McManus told him of the claim of the Sandersons. He testified that in late 1946 or the spring of 1947 Mrs. McManus and he went to the Sanderson home to see if they could not make a compromise settlement; that some of the Sanderson family were there; that he asked Mr. Sanderson "if he would consider taking $300 for three feet" and Mr. Sanderson replied: "Those three feet would depreciate my property $3,000"; and the matter was never mentioned again. Mr. Sanderson testified with respect to this conversation that Mr. McManus "said he would like to buy enough to clear his house. He didn't say how much. He said he would pay what it was worth and I didn't say anything, didn't give him an answer"; that a purchase price was never discussed; and that was the only time the subject was mentioned. Mrs. Sanderson testified that Mr. McManus wanted to buy five feet and that they were willing to sell enough to clear the house, but they heard no more of it. Mrs. Zimmer testified Mr. McManus *356 said something about buying enough to clear his house; that something was said about the price and Mr. McManus stated he would find out how much it was worth. Miss Mulcahy and Mr. Zimmer also recalled the conversation but, as we read the record, paid little attention to it.
The preponderance of the evidence was for defendants. The trial court so found. It established the essential elements of adverse possession for the required period of time. Hilgert v. Werner, 346 Mo. 1171, 145 S.W.2d 359, 361 [2-4]. In plaintiffs' case of Courtner v. Putnam, 325 Mo. 924, 30 S.W.2d 126, 129-131, defendant regarded the fence to be the true line, but intended to claim only to the true line wherever that might be regardless of where the fence was. Defendants and other owners and occupants of 5133 Virginia claimed to the fence and its prolongation to the street regardless of the true boundary line. It is the intent to possess and not an intent to take from the true owner something the possessor knows belongs to another that governs. Patterson v. Wilmont, Mo.Sup., 245 S.W.2d 116, 121[1, 2, 5], reviewing cases; Edie v. Coleman, 235 Mo.App. 1289, 141 S.W.2d 238, 243, and on certiorari, State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174, 176 [5-8]; Landers v. Thompson, 356 Mo. 1169, 205 S.W.2d 544, 545 [2]; Tillman v. Hutcherson, 348 Mo. 473, 154 S.W.2d 104, 106[1, 10], distinguishing, 154 S.W.2d loc. cit. 108[8], plaintiffs' case of Courtner v. Putnam, supra, which also recognizes the appropriateness of the rule applicable here.
There is more to defendants' case than the fence, the terrace, and the poplar trees. The evidence establishes that the owners and occupants of 5133 Virginia erected a trellis or trellises, raised shrubs and flowers, mowed the grass and exercised other acts of possession over and claimed ownership of the land in dispute from the time of the erroneous survey in 1931, and particularly from the time Edward M. and Lenora W. Berry acquired title on February 26, 1934. While there was testimony that plaintiffs performed some acts of possession, such as mowing the grass, the court could find: Plaintiffs apparently observed until 1946 or 1947 the line marked by the fence and terrace and its prolongation as the boundary line. When plaintiffs built or repaired the fence along the rear property line they terminated it at the post in line with the wire fence. They permitted, without protest, the construction of a trellis or trellises along the fence line, the growing of flowers thereon, and the raising of shrubs et certera on the disputed strip by occupants of 5135 Virginia and put the shrubs and trellis in defendants' yard when they constructed the driveway in 1947. Plaintiffs claimed a property right in and over the driveway to the north of their house without claiming south of the fence line south of their house. They filed a suit to establish their rights over the driveway to the north on June 18, 1947, after they had the corrected surveys of March 6, 1946, and May 19, 1947. They apparently recognized the fence as the line when they inspected and purchased the property in July, 1940. If the fence were down at times, as testified to by plaintiffs' witnesses, it appears that they replaced it. We find stated in plaintiffs' case of Cashion v. Meredith, 333 Mo. 970, 64 S.W.2d 670, 672: "`* * * To constitute an adverse possession there need not be a fence, building, or other improvement made; and it suffices for this purpose that visible and notorious acts of ownership are exercised over the premises in controversy for the time limited by the statute. * * *"' See Finck Realty Co. v. Lefler, Mo.Sup., 208 S.W.2d 213, 215[2]. There are sufficient facts to bring defendants' case within Morrow v. Elmore, Mo.Sup., 234 S.W.2d 613. See also Milligan v. Fritts, 226 Mo. 189, 125 S.W. 1101.
The fact that defendants attempted to purchase a strip 3 feet wide from plaintiffs in 1946 or 1947 for $300 to clear their house might have been persuasive evidence against the claim of adverse possession in some circumstances, but is not conclusive here for two reasons. If this were an effort to settle and adjust the controversy, as testified by Mr. McManus, an issue of fact was presented. Of evidence *357 of this nature, it is stated in Railsback v. Bowers, Mo., 257 S.W. 119, 121 [8]: "The weight to be accorded this evidence, as well as all the other, was of course for the trier of the facts." Young v. Levine, 326 Mo. 593, 31 S.W.2d 978, 981, states: "An offer of compromise does not estop the party making it from thereafter setting up any legal claim or defense, or asserting any right to which the offer of compromise related." The underlying facts differ in plaintiffs' cases of Missouri Lumber & Mining Co. v. Jewell, 200 Mo. 707, 716, 98 S.W. 578, 580, and Missouri City Coal Co. v. Walker, Mo.Sup., 188 S.W.2d 39. Another important factor is that upon the expiration of the limitation period in 1944, defendants' title could be lost or divested only in the same manner as a title by grant. "A title acquired by adverse possession, under our statute, is in every respect as good, for purposes of attack or defense, as a title by deeds running back to the government." Scannell v. American Soda Fountain Co., 161 Mo. 606, 608, 61 S.W. 889, 891, citing cases; King v. Fasching, Mo. Sup., 234 S.W.2d 549, 551 [1]. See also Watt v. Donnell, 80 Mo. 195, 198; Matthews v. Citizens' Bank of Senath, 329 Mo. 556, 46 S.W.2d 161, 162[1]; 2 C.J.S., Adverse Possession, § 208, page 807; 1 Am.Jur. 797, Sec. 13. The holding of the trial court is not to be overthrown on the instant issue.
Plaintiffs also contend that the decree permanently deprives them of the means of ingress and egress to the rear of their home and that in equity this right of ingress and egress to their garage should not be destroyed. We do not find this specific issue presented to the trial court by the pleadings or necessarily established by the evidence of record, if plaintiffs otherwise could demand the same. What is mentioned above concerning the character of the title acquired upon the completion of the adverse possession seemingly forestalls a ruling for plaintiffs. The record does not establish error in refusing the relief here requested.
The foregoing disposes of the points presented. The judgment is affirmed.
WESTHUES and BARRETT, CC., concur.
PER CURIAM.
The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All concur.