252 S.W.2d 286 (1952)
CITY OF KIRKSVILLE
v.
YOUNG et al.
No. 43089.
Supreme Court of Missouri, Division No. 1.
November 10, 1952.
Roland A. Zeigel, Kirksville, Jayne & Jayne, Kirksville, for appellants.
A. D. Campbell, J. P. Painter, Philip J. Fowler, Wm. C. Frank, Geo. J. England and Russell D. Roberts, City Atty., City of Kirksville, all of Kirksville, for plaintiff-respondent.
LOZIER, Commissioner.
Plaintiff-respondent (herein called plaintiff) sued to determine title to real estate. The trial court found for plaintiff and defendants-appellants (herein called defendants) appealed.
The petition alleged that plaintiff was the fee simple owner of a described 50 acre tract (herein sometimes called "the tract"); that plaintiff and its predecessors in title had been in adverse, open and notorious possession of the tract since September 2, 1933; that defendants claimed some title or interest, the nature and character of which plaintiff had no knowledge, except that the claim was adverse and prejudicial to plaintiff. Plaintiff prayed that the court "try, ascertain and determine the estate, title and interest of the parties * * *, and to define and adjudge by its decree that plaintiff is the fee simple owner * * *, and that defendants, nor either of them, or any one for them or in their behalf, have any right, title or interest * * *, and that they be forever enjoined and restrained from asserting, claiming or setting up any right, title or interest * * *, and for such other and further orders as may be proper."
Defendants' answer: Denied that plaintiff was the fee simple owner; admitted that they claimed some title and interest; denied that plaintiff did not know the nature of their interest and alleged that plaintiff knew that they claimed to be fee simple owners; alleged that they were the fee *287 simple owners and that plaintiff had no right, title or interest. Defendants prayed the court to "try, ascertain and determine the estate, title and interest of the parties * * * and to define and adjudge by its decree that defendants are the" fee simple owners "and that plaintiff has no right, title or interest thereto and for all proper relief in the premises."
Defendants claimed legal title under a 1914 warranty deed from I. N. McDonough to defendant Clint Young and his brother William Young. The other defendants are either William's heirs or spouses of such heirs. The 1914 deed conveyed approximately 592 acres, including the 50 acre tract instantly involved. By warranty deed dated September 2, 1933, Clint and William Young conveyed to George M. Laughlin lands adjoining the tract on the south and east. Adjoining the tract on the north were the Luman and Darnell lands, and on the west, the Morrow-Mcintosh land. In the 1933 Young-Laughlin deed, the west 40 acres of the tract were not mentioned and the east 10 acres were expressly excepted. Laughlin died in 1948. In December, 1949, his heirs quitclaimed the tract to plaintiff city.
Mrs. Denslow, daughter of Laughlin, age 37 at trial time, testified that: Her father had used the tract in farming operations from September, 1933, until his death in 1948, and that thereafter his heirs continued to Use it until they deeded it to the city; their cattle had "roamed back and forth" since 1933; there had been no fences on the tract's south and east sides; there was a fence on the north, next to the Luman land; her father was grazing cattle on the tract all the time; he pastured either sheep or goats one year and cattle a good many years; she did not know of any other livestock ever being pastured on the tract except that of her father or his heirs; the entire Laughlin farm was rough land; over a period of years her father had men "clearing it up and getting it seeded and that is true of the land in and around the 50 acres in controversy, that was all part of the same type of land * * * none of which is suitable for plowing and crop raising. * * * It was grazing land and he (her father) got it in a state where it would produce grass * * *. It had no value at all until it was cleared; it didn't even have grass on it"; the tract was cleared just the same as the adjoining land owned by her father who paid for the labor for the clearing; after September, 1933, her father had full use and exercised full control of the tract; so did his heirs after his death; and she had never known of any person other than her father and his heirs exercising any control over the tract.
Earl Ogle testified that he had worked on the Laughlin farm since 1934 and was familiar with all of the land of which Laughlin had possession, including the 50 acre tract; there were fences between the tract and the Luman and Darnell lands on the north and the Morrow-Mcintosh land on the west; after Laughlin received the Young deed, witness had rebuilt these fences and had repaired them many times; during all that time the tract was not fenced on either the east or the south; Laughlin had either cattle or sheep on the tract all of the time after witness began working for him in July, 1934; witness had since continuously worked on the Laughlin farm; the Laughlin farm had been in the possession of Laughlin's heirs since his death; witness cleared the brush and then mowed the tract and had supervision of the other men that helped clear the tract; they cleared it all; most of the "big stuff" was cut in 1933 before witness began working for Laughlin; the following year they cut down the stumps and brush and then mowed it from then on; witness never knew of anyone, other than Laughlin and his heirs, running stock on, or being in possession of, the tract; and "he (Ogle) was supposed to be looking after it" all those years.
Receipts for payment of taxes on the tract for the years 1933-1950, both inclusive, except 1948, were in evidence. That for 1933 showed the tract assessed in the name of Clint Young and "pd. by Mrs. Louise Mills" on September 5, 1933 (three days after the Young-Laughlin deed was executed). Those for each of the years 1934-1947, both inclusive, showed the tract assessed in the name of, and payment made by, Laughlin. On Laughlin's 1948 tax receipt, a line had been drawn through the *288 description of the tract and the amount of the taxes deducted from the totals of his real property taxes for that year. (His other 1948 taxes were paid by Mrs. Denslow on October 22, 1948, after her father's death. The Laughlin heirs did not thereafter pay any taxes on the tract.) Apparently, no 1948 taxes were paid on the tract by anyone. On defendant Clint Young's receipt for 1948 appears a notation: "Put this description on for 1949, 50 acres, w. pt. S½ SE 12-62-16" (the 50 acre tract). Clint Young's receipts for 1949 and 1950 showed payment by him for each of those years.
Relying entirely upon the 1914 McDonough-Young deed and the 1933 Young-Laughlin deed (which, as stated, did not describe 40 and expressly excluded 10 acres of the 50 acre tract), defendants offered no evidence contradictory of plaintiff's evidence.
The trial court found that, on September 2, 1933, Laughlin "took complete possession of and control" of the tract and "ever since said date he and his heirs have been in actual, open, notorious, exclusive and continuous possession of said land and under claim of right for more than ten consecutive years, paid all taxes thereon for said time, and that their title thereto has been acquired by adverse possession."
Plaintiff's claim was one of adverse possession under the ten year statute, Sec. 516.010. All statutory references, unless otherwise stated, are both to RSMo 1949 and V.A.M.S. The action is one under Sec. 527.150. That section authorizes any person claiming any interest in real estate to institute an action against any person claiming any interest therein; and, where "asked for in the pleadings of either party, the court may hear and finally determine any and all rights, claims, interest, liens and demands, whatsoever of the parties, or of any one of them * * * and may award full and complete relief, whether legal or equitable, to the several parties * * *."
Defendants' first two assignments involved their contention that "the judgment and decree was beyond the issues presented." Defendants say that under the pleadings the only issue was as to the legal or record title. However, in their pleadings, both parties claimed fee simple ownership (plaintiff expressly basing its claim upon adverse possession), denied that the other party had any interest whatsoever and expressly asked the court to "try, ascertain and determine the estate, title and interest of the parties." We hold that the judgment and decree was within the issues made by the pleadings.
"We review this non-jury case as a suit in equity; we give due regard to the trial court's opportunity to judge the credibility of the witnesses; the judgment may not be set aside unless clearly erroneous." Kimberly v. Presley, Mo.Sup., 245 S.W.2d 72, 75.
Adverse possession is: "(1) * * * hostile; that is, under a claim of right; (2) actual; (3) open and notorious; (4) exclusive; and (5) continuous." State ex rel. Edie v. Shain, 348 Mo. 119, 152 S.W.2d 174, 176. The instant plaintiff's uncontradicted evidence was that the possession of plaintiff's grantors and their predecessor in title was adverse. Defendants do not contend that Clint and William Young or the latter's heirs ever had possession of the tract, or any part thereof, after September, 1933. Nor do they contend that the evidence does not sustain the trial court's finding that Laughlin and his heirs had been in actual, open, notorious, exclusive and continuous possession for more than ten consecutive years.
However, defendants contend that "there was no evidence from which the court could legally find that Laughlin's possession was adverse to the claim of the rightful owners." They argue that replacing and maintaining the north and west boundary fences, clearing and grazing the tract and paying taxes were as inconsistent with a claim of ownership as those acts were consistent with such a claim; and that, under plaintiff's evidence, Laughlin may have used the two pre-existing fences, cleared the tract and paid the taxes for the privilege of pasturing the tract. However, the trial court's finding that Laughlin's possession was under claim of right is correct and is fully supported by the substantial, uncontroverted evidence tending to show *289 that Laughlin's possession was hostile to defendants' title.
Furthermore, while plaintiff had the burden of proof as to the adverse possession issue, once plaintiff made its prima facie case, the burden of going ahead with the evidence on that issue shifted to defendants. Landers v. Thompson, 356 Mo. 1169, 205 S.W.2d 544, 546. As stated, defendants offered no evidence whatsoever on that issue. More particularly, defendants offered no evidence tending to show that Laughlin's possession was permissive and, hence, not adverse. See Eld v. Ellis, Mo. Sup., 235 S.W.2d 273, 275.
Under all the circumstances, the trial court's finding that Laughlin's possession was under claim of right (that is, hostile to defendants' record ownership) was correct, being fully supported by substantial evidence. We so hold. Contrast the facts in Horton v. Gentry, 357 Mo. 694, 210 S.W.2d 72, wherein the evidence failed to show that the predecessor in title of the person claiming by adverse possession was in actual and exclusive possession (of "vacant, unimproved and uncultivated woods pasture land" similar to the tract instantly involved) more than ten years before the suit was filed.
The judgment is affirmed.
VAN OSDOL and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by LOZIER, C., is adopted as the opinion of the court. All concur.